**In re Daniel H. OVERMYER, Debtor.**

**Harvey S. BARR, as Trustee of Daniel H. Overmyer, Plaintiff,**

**v.**

**Daniel H. OVERMYER, Defendant.**

**Bankruptcy No. 82 B 20329.**

**No. 83 Adv. 6036.**

United States Bankruptcy Court, S.D. New York.

Oct. 29, 1990.

Barr & Rosenbaum, Spring Valley, N.Y., for plaintiff.

Raymond J. Aab, New York City, for debtor/defendant.

## DECISION ON MOTION FOR SUMMARY JUDGMENT

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The plaintiff, Harvey S. Barr, as Trustee of the debtor, Daniel H. Overmyer ("the Trustee"), has moved this court, pursuant to Fed.R.Civ.P. 56, which is made applicable to this adversary proceeding by Bankruptcy Rule 7056, for summary judgment on all counts of a complaint filed with this court on or about April 24, 1985 (the "Complaint"). The Complaint instituted an adversary proceeding in which the Trustee seeks a denial of the debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(2), 727(a)(3), 727(a)(4)(A), 727(a)(4)(B), 727(a)(5) and 727(a)(7) (the "Adversary Proceeding"). The Trustee asserts that there is no genuine issue of material fact to be litigated because the underlying facts which support a denial of the debtor's discharge have been fully litigated and determined in the proceedings in the Bankruptcy Court for the Northern District of Ohio reported as *Hadar Leasing International Co., Inc. v. D.H. Overmyer Telecasting Co., Inc. (In re D.H. Overmyer Telecasting Co., Inc.)*, 23 B.R. 823 (Bankr.N.D.Ohio 1982), *aff'd*, 53 B.R. 963 (N.D.Ohio 1984), in the decision rendered by the United States Court of Appeals for the Sixth Circuit reported as *United States v. Daniel Overmyer*, 867 F.2d 937 (6th Cir.1989) and in the proceedings before this court reported as *First National Bank of Boston v. Daniel H. Overmyer (In re Overmyer)*, 52 B.R. 111 (Bankr.S.D.N.Y.1985) (collectively referred to as the "prior Overmyer proceedings"). In addition, the Trustee asserts that the debtor's failure to admit or deny paragraph 4 of the Complaint filed in the Adversary Proceeding constitutes an admission as set forth in Fed.R.Civ.P. 8(d).[1]

## FACTS

1. The debtor, Daniel H. Overmyer ("the Debtor"), filed, with this court, a voluntary petition for relief under Chapter 7 on May 29, 1982.

2. On or about April 24, 1985, the Trustee filed his Complaint objecting to the dis-

---

1. Rule 8(d) of the Federal Rules of Civil Procedure provides:

 (d) **Averments of Failure to Deny.** Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading.

charge of the Debtor pursuant to 11 U.S.C. § 727. The Complaint sets forth eight claims for relief as follows:

### Count 1

The Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(2) because during or after the one year preceding the filing of his petition, the debtor concealed his or his estate's equitable interests in several corporations, including Hadar Leasing International Co., Inc. ("Hadar") and D.H. Overmyer Co., Inc. ("D.H. Overmyer") (collectively referred to as "the Overmyer Companies").

### Count 2

The Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(4)(A) because the Debtor made a false oath by signing the Bankruptcy Petition, Schedules and Statements of Affairs which failed to list any of the Debtor's equitable interests in the Overmyer Companies.

### Count 3

The Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(4)(B) because the Debtor listed false claims of some of the Overmyer Companies in his Schedules.

### Count 4

The Debtor's discharge should be denied pursuant to 11 U.S.C. §§ 727(a)(3) and 727(a)(7) because the Debtor, within one year preceding the filing date of the Petition, concealed information from which the financial condition or business records of some or all of the Overmyer Companies might be ascertained, by presenting, or causing to be presented, records that had been backdated.

### Count 5

The Debtor's discharge should be denied pursuant to 11 U.S.C. §§ 727(a)(3) and 727(a)(7) because the Debtor, within one year preceding the filing date of the Petition, destroyed, mutilated or did not keep records from which the financial or business transactions of some or all of the Overmyer Companies, might be ascertained.

### Count 6

The Debtor's discharge should be denied pursuant to 11 U.S.C. §§ 727(a)(4)(A) and 727(a)(7) because the Debtor filed at least one false affidavit with the Ohio Bankruptcy Court in connection with the bankruptcy cases of Hadar and D.H. Overmyer which were filed on March 27, 1981 and November 16, 1973, respectively.

### Count 7

The Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(5) because the debtor has failed to satisfactorily explain the loss and deficiency of assets to meet his liabilities.

### Count 8

The Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(3) because the Debtor concealed, destroyed, mutilated, falsified, or failed to keep or preserve recorded information from which the Debtor's financial condition or business transactions might be ascertained.

3. The Debtor filed a *pro se* answer on or about July 17, 1989 (the "Answer") which admitted that he had signed a bankruptcy petition and certain accompanying papers and that the Ohio Bankruptcy Court made certain determinations, the validity of which the debtor questioned. However, he specifically denied all of the remaining allegations in the Complaint with the exception of paragraph 4 to which the debtor made no reference. Paragraph 4 of the Complaint provides:

4. On and during the one year preceding the Filing Date, the Debtor had equitable interests in several corporations (collectively, the "Overmyer Companies"), including, without limitation,

a) Hadar Leasing International Co. Inc., chapter 11 debtor and debtor-in-possession in chapter 11 no. B81–3124 (Bankr.N.D.Ohio ("Hadar"),

b) D.H. Overmyer Co., Inc., Chapter XI debtor and debtor-in-possession in Bankruptcy No. 73–B–1129 (Bankr.S. D.N.Y.) ("DHO").

4. The Answer also contained two affirmative defenses. These affirmative defenses were that the complaint failed to

state a claim upon which relief can be granted and that the decision rendered by the Bankruptcy Court in Ohio was invalid because it violated the automatic stay in this case.

5. The Trustee filed a Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56, made applicable by Bankruptcy Rule 7056, on or about June 6, 1990.

6. On or about August 24, 1990, a Cross-motion for Denial of the Trustee's Motion for Summary Judgment (the "Cross-motion") was filed with this court by the Debtor. In addition to denial of the Trustee's Summary Judgment Motion, the debtor sought an order pursuant to Fed.R.Civ.P. 15(a) to amend his answer so that he could deny paragraph 4 of the Complaint.

7. On or about August 24, 1990, the Debtor filed an unsigned, undated, amended answer (the "Amended Answer") which denied, with certain exceptions, paragraph 4 of the Complaint.

8. This court issued a Preliminary Memorandum Decision on Motion and Cross Motion for Summary Judgment on September 10, 1990 (the "Preliminary Decision") which determined that the Amended Answer was not signed by Mr. Overmyer's attorney, as required by Fed.R.Civ.P. 11 which is made applicable by Bankruptcy Rule 7011. The Preliminary Decision also ordered a properly signed, Amended Answer to be filed with this court within 10 days. In addition, the Preliminary Decision ordered that if a properly signed, amended answer was not filed within 10 days, then the Amended Answer would be stricken and those averments in the complaint which were not answered in the Answer filed with this court on or about July 17, 1989 would be deemed admitted in accordance with Fed.R.Civ.P. 8 and Bankruptcy Rule 7008.

9. On or about September 18, 1990, another amended answer was filed with this court and signed by Daniel H. Overmyer, rather than the attorney of record (the "Second Amended Answer"). Accompanying the Second Amended Answer was a letter to the court dated September 17, 1990 in which the debtor expressed that his attorney was the attorney of record only in connection with defending the Trustee's Motion for Summary Judgment. This court, in turn, sent a letter to the attorney dated September 27, 1990, which noted that the attorney had submitted to this court a motion pursuant to Fed.R.Civ.P. 15(a) seeking to amend Mr. Overmyer's answer. The letter gave the attorney until October 5, 1990 to submit a properly signed, amended answer. A properly signed, amended answer was filed with this court on October 10, 1990 (the "Third Amended Answer").

10. In his Third Amended Answer, the Debtor denied the allegations contained in paragraph 4 of the Complaint, except that he admitted that the Ohio Bankruptcy Court made "certain determinations concerning the debtor's control over the Hadar and DHO entities." The Debtor further disputed that "he had any equitable interest in those entities such as might pass to the trustee herein." Finally, the debtor answered that he disputes the findings of the Ohio Bankruptcy Court with respect to any equitable interests in Hadar and DHO.

## DISCUSSION

### A. *Summary Judgment*

In ruling on a motion for summary judgment, the court must review the pleadings, depositions, answers to interrogatories, admissions and affidavits, if any, to determine if there is no genuine issue as to any material fact so that the moving party is entitled to a judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses ..." *Celotex v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Industrial Co., Inc. v. Zenith Radio Corp.*, 475 U.S. 574, 599, 106 S.Ct. 1348, 1362, 89 L.Ed.2d 538 (1986).

## B. Collateral Estoppel

As observed by the Supreme Court in *Parklane Hoisery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979),

Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation.

*Id.* at 326, 99 S.Ct. at 649, 58 L.Ed.2d at 559; *citing, Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 328–29, 91 S.Ct. 1434, 1442–43, 28 L.Ed.2d 788. Under the doctrine of collateral estoppel, a judgment in a prior suit precludes relitigation of issues, in a subsequent action, which were actually litigated and necessary to the outcome of the first suit. *Parklane Hosiery Co. v. Shore*, 439 U.S. at 326, 99 S.Ct. at 649, 58 L.Ed.2d at 559.

Bankruptcy courts have increasingly been asked to determine the extent to which the doctrines of res judicata and collateral estoppel apply to preclude relitigation of issues and claims previously decided by other state and federal courts. Any such analysis must begin with *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), a case in which the Supreme Court held that extrinsic evidence may be admitted in order to determine accurately the dischargeability of a debt previously reduced to judgment in a state court. 442 U.S. at 138–39, 99 S.Ct. at 2213, 60 L.Ed.2d at 776.[2] Although the Supreme Court was ruling on the issue of the defensive use of res judicata by the debtor in a bankruptcy dischargeability proceeding where the creditor's claim had previously reduced to judgment in a state court, the *Felsen* court provided some guidance into the offensive use of collateral estoppel. In footnote 10, the Court observed that if a state court determined factual issues using identical standards as those found in § 17, then collateral estoppel could bar relitigation of those issued in bankruptcy. 442 U.S. at 138, 99 S.Ct. at 2213, 60 L.Ed.2d at 776.

Since the *Felsen* decision, the doctrines of collateral estoppel and res judicata in the context of discharge and dischargeability have been the subject of much debate. For example, at least one circuit has held that a prior judgment will never be granted issue preclusive effect in a subsequent dischargeability proceeding, although the judgment may be prima facie evidence of the facts contained therein. *See In re Rahm*, 641 F.2d 755, 757 (9th Cir.1981), *cert. denied*, 454 U.S. 860, 102 S.Ct. 313, 70 L.Ed.2d 157 (1981). While other circuits have determined that issue preclusion is appropriate where the requirements of collateral estoppel are met. *See Wheeler v. Laudani*, 783 F.2d 610 (6th Cir.1986); *Lombard v. Axtens*, 739 F.2d 499 (10th Cir.1984); *Matter of Shuler*, 722 F.2d 1253 (5th Cir.1984), *cert. denied*, 469 U.S. 817, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984).

In addition, a debate exists on the issue of whether state or federal tests of collateral estoppel should be utilized by a federal judge when applying state court findings to discharge and dischargeability proceedings. *See Matter of Shuler*, 722 F.2d 1253 (5th Cir.1984), *cert. denied*, 469 U.S. 817, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984); *Matter of Allman*, 735 F.2d 863 (5th Cir.1984); *Spilman v. Harley*, 656 F.2d 224 (6th Cir.1981); (federal test for issue preclusion should be applied); *Compare In re Stowell*, 102 B.R. 589 (Bankr.W.D.Tex.1989); *In re Byard*, 47

---

**2.** Unlike the posture of this case, the debtor in *Felsen* was applying res judicata defensively in an attempt to preclude the creditor from litigating the issue of fraud because the creditor could have raised that issue in the state court § 17 proceeding. Prior to 1970, the bankruptcy court made the determination of whether a debtor could obtain a discharge under § 14, but the state courts made the determination of dischargeability of past debts under § 17. However, in 1970 Congress amended § 17 to require creditors to seek an adjudication from the bankruptcy court on the issues of dischargeability. *See In re Nicholas*, 510 F.2d 160, *cert. denied*, 421 U.S. 1012, 95 S.Ct. 2417, 44 L.Ed.2d 680 (1975); *See also* Pub.L. No. 467, §§ 5–7, 84 Stat. 992; H.R.Rep. No. 91–1052 (1970); S.Rep. No. 91–1173 (1970), U.S.Code Cong. & Admin.News 1970, p. 4156. Dischargeability provisions which are substantially similar to those of § 17 are now codified in 11 U.S.C. § 523.

B.R. 700 (Bankr.M.D.Tenn.1985); (In light of the recent developments in full faith and credit laws set forth in *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985), state issue preclusion standards should be applied to determine whether a state court judgment would be granted a preclusive effect by a state court which rendered the judgment and if so, whether any federal statute or policy requires that the judgment not be given preclusive effect.); *See also In re Wagner,* 79 B.R. 1016 (Bankr.W.D.Wis.1987); *In re Manuel,* 76 B.R. 105 (Bankr.E.D.Mich.1987); *In re All American of Ashburn, Inc.,* 56 B.R. 186 (Bankr.N.D.Ga.1986), *aff'd,* 805 F.2d 1515 (11th Cir.1986) (questioning the use of the federal test in a determination of issue preclusion by a bankruptcy judge in a dischargeability proceeding).

However, unlike most decisions which address the issue of the preclusive effect of prior judgments in discharge and dischargeability proceedings, this case involves the preclusive effect of a prior decision by a bankruptcy judge in a bankruptcy case, as well as a decision by a federal circuit judge. As a result, many of the issues which arise in the context of the application of collateral estoppel to issues decided by a state court judge in a subsequent bankruptcy discharge or dischargeability proceeding are moot. In the present case, this court need only look to the burden of proof standard applied by the bankruptcy and federal court judges in the prior determinations to ascertain whether they are the same standards as those applied in discharge proceedings. If the standards are the same, then issue preclusion will be proper if the federal standards governing its application are met.

1. *Burden of Proof*

■ As set forth in Bankruptcy Rule 4005, the burden of proving an objection to

discharge is on the plaintiff. However, the Bankruptcy Code and Rules are purposely silent regarding the measure of proof to be applied by courts in ruling on a § 727 discharge proceeding. As explained in the Advisory Committee Note to Rule 4005,

> Subject to the allocation by the rule of the initial burden of producing evidence and the ultimate burden of persuasion, the rule leaves to the courts the formulation of rules governing the shift of the burden of going forward with the evidence in light of considerations such as the difficulty of proving the nonexistence of a fact and of establishing a fact as to which the evidence is likely to be more accessible to the debtor than to the objector.

Advisory Committee Note to Rule 4005, Rules of Practice and Procedure (1983).

Judge Francis G. Conrad, in the case of *Chittenden Trust Co. v. Mayo (In re Mayo ),* 94 B.R. 315 (Bankr.D.Vt.1988), did a thorough analysis on the relative burden issues in a discharge proceedings. The analysis includes an examination of the historical changes in the burden allocation of an objection to discharge, as enunciated by the Second Circuit Court of Appeals. *See Federal Provision Co., Inc. v. Ershowsky,* 94 F.2d 574, 575 (2d Cir.1938) (Prior to the amendment of Section 14(b) by the Act May 27, 1926, § 6, 11 U.S.C. § 32(b), the creditor had burden of proof throughout, but the addition of 11 U.S.C. § 32(b) placed the burden of proof upon the bankrupt once the creditor had shown reasonable grounds for the belief that the bankrupt had committed an act which would bar his discharge.); *Accord In re Melnick,* 360 F.2d 918, 919–20 (2d Cir.1966); *Matter of Decker,* 595 F.2d 185, 188 (3d Cir.1979); *Feldenstein v. Radio Distributing Co.,* 323 F.2d 892, 893 (6th Cir.1963); *Johnson v. Bockman,* 282 F.2d 544, 545 (10th Cir.1960) (Section 14(c) [3] shifted the burden of going forward with the evidence upon the debtor, as

---

**3.** Unlike the current Bankruptcy Code, the Bankruptcy Act required only that the person objecting to a discharge show reasonable grounds existed for believing that the debtor committed any of the acts which would bar a discharge. Bankruptcy Act § 14(c), 11 U.S.C.

§ 32(c) (1970). Once the party opposing the discharge had done this, the burden of proof shifted to the debtor, who then had to establish that those acts had not been committed. Bankruptcy Act § 14(c), 11 U.S.C. § 32(c) (1970).

well as the ultimate burden of persuasion, once the objector made a prima facie case for denial of a discharge.) *But see Matter of Martin,* 554 F.2d 55, 58 n. 1 (2d Cir.1977) (The burden of proof placed upon the debtor by § 14(c), after the complainant had made out a prima facie case for discharge, was superseded by Bankruptcy Rule 407, which provided that the burden of persuasion remained always on the objector.) *Chittenden Trust Co. v. Mayo (In re Mayo),* 94 B.R. at 320–21. The current burden of going forward with the proof for discharge proceedings is contained in Bankruptcy Rule 4005 [4] which places the burden entirely upon the objecting party.

Although the burden of persuasion required in a discharge proceeding has been clearly delineated, the lack of legislative guidance has lead to a split among courts as to the required burden of proof. *See Matter of Bogstad,* 779 F.2d 370 (7th Cir. 1985); *First Federated Life Insurance Co. v. Martin (In re Martin),* 698 F.2d 883 (7th Cir.1983); *Camacho v. Martin (In re Martin),* 88 B.R. 319 (D.Colo.1988); *Booth v. Booth (In re Booth),* 70 B.R. 391 (Bankr.D. Colo.1987) (standard of proof in denying a debtor's discharge under § 727 is by clear and convincing evidence) *Compare with Farmer's Co-op Ass'n of Talmage, Kan. v. Strunk,* 671 F.2d 391 (10th Cir.1982); *American Savings & Loan Ass'n v. Weber (In re Weber),* 99 B.R. 1001 (Bankr.D.Utah 1989); *Cardenas v. Stowell (In re Stowell),* 113 B.R. 322 (Bankr.W.D.Tex 1990) (objections to discharge need only be proven by a preponderance of the evidence).

The cases which are most important to this court for their precedential value are those of the Second Circuit Court of Appeals. However, the Second Circuit has rendered inconsistent decisions on the appropriate burden to be utilized. *See In re Robinson,* 506 F.2d 1184, 1185 (2d Cir.1974) (the proper burden is that of preponderance of the evidence); *But see Bank of Pennsylvania v. Aldman (In re Aldman),* 541 F.2d 999, 1005 (2d Cir.1976) (clear and convincing evidence is the appropriate burden in a discharge proceeding).

The *Mayo* court distinguishes many of the cases which use a preponderance of the evidence standard because they "rely on decisions under the Act § 14(c) which stated that the objector shall show ... reasonable grounds ..." *Chittenden Trust Co. v. Mayo (In re Mayo),* 94 B.R. at 328, *citing, In re Robinson,* 506 F.2d 1184 (2d Cir.1974); *In re Morris Plan Industrial Park v. Finn,* 149 F.2d 591 (2d Cir.1945). Furthermore, "[t]hose cases which hold that clear and convincing evidence is required rely on a lengthy line of cases which place the non-dischargeability provisions in the same category as fraud complaints, and then conclude that the burden of proof is by clear and convincing evidence." *Id.* at 328, *citing, In re Locust Building Co.,* 299 F. 756, 765 (2d Cir.1924), *cert. denied,* 265 U.S. 590, 44 S.Ct. 635, 68 L.Ed. 1195 (1924).

This court has previously observed that "[o]bjections to discharge must be construed strictly against the objectant and liberally in favor of the debtor because the relief afforded in bankruptcy cases was intended to permit an honest debtor to obtain a fresh start free from debt." *Continental Illinois Nat'l Bank and Trust Co. of Chicago v. Bernard (In re Bernard),* 99 B.R. 563 (Bankr.S.D.N.Y.1989), *citing, Bank of Pennsylvania v. Adlman (In re Adlman),* 541 F.2d 999 (2d Cir.1976); *In re Kokoszka,* 479 F.2d 990, 996 (2d Cir.1973), *aff'd, sub nom Kokoszka v. Belford,* 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374, *reh'g denied,* 419 U.S. 886, 95 S.Ct. 160, 42 L.Ed.2d 131 (1974); *In re Tabibian,* 289 F.2d 793, 795 (2d Cir.1961). Recognizing the severity of the denial of a debtor's discharge and the ultimate burden of proving the facts essential to the objection placed upon the plaintiff by Bankruptcy Rule 4005, this court has previously held that clear and convincing evidence is the appropriate burden of proof to be applied in a discharge proceeding. *See Continental Illinois National Bank and Trust Com-*

---

**4.** Bankruptcy Rule 4005 provides that "[a]t the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection."

*pany of Chicago v. Bernard (In re Bernard)* 99 B.R. at 570.

This court also previously determined that the overwhelming evidence before the Ohio court in *Hadar Leasing International Co., Inc. v. D.H. Overmyer Telecasting Co., Inc. (In re D.H. Overmyer Telecasting Co., Inc.)* 23 B.R. 823 (Bankr.N.D.Ohio 1982), *aff'd*, 53 B.R. 963 (N.D.Ohio 1984) "established fraudulent conduct by clear and convincing, if not conclusive proof." *In re Overmyer*, 52 B.R. 111, 116 (Bankr.S. D.N.Y.1985). Since the standard applied by the Ohio court is the same as that applied in a discharge proceeding, this court now turns to the application of the test for collateral estoppel.

### 2. *Federal Application of Collateral Estoppel*

■ The federal test frequently utilized by bankruptcy courts is the 4 part test set forth in *In re Ross*, 602 F.2d 604 (3rd Cir.1979). The *Ross* court determined that the doctrine of collateral estoppel may be applied if: (1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) the issue was determined by a valid and final judgment; and (4) the determination was essential to the prior judgment. *In re Ross*, 602 F.2d at 608.

### *Count 1—Denial of Discharge under 11 U.S.C. § 727(a)(2)*

■ The Trustee urges that summary judgment should be granted to deny the Debtor's discharge under 11 U.S.C. § 727(a)(2)[5] because the Debtor omitted his equitable interests in Hadar from his schedules with the intent to defraud his creditors. The language of the Ohio bankruptcy court relied upon by the Trustee is as follows:

**29.1. Mr. Overmyer's Use of a Deceptive Corporate Network To Disguise His Control.** Mr. Overmyer exercises control through a series of related corporations headquartered at 3 Park Avenue. These corporate entities were established with the assistance of Mr. Connery, and at least since the time Mr. Overmyer filed the Warehouse XI in 1973, were structured so that Mr. Overmyer could claim to have neither any legal nor equitable interest in the companies.

\* \* \* \* \* \*

29.2 Pervasive Overmyer Control. Mr. Overmyer made the decision to have so many corporations at 3 Park Avenue, and was the controlling force behind all of those corporations. Mr. Overmyer controls all decisions made on behalf of Overmyer organizations with offices at 3 Park Avenue, as he has always ultimately done ... In particular, Mr. Overmyer controls, and has controlled, DHO, ...

23 B.R. at 888.

In order to use collateral estoppel to deny the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2), this court must find that the Debtor's conduct occurred either within one year of the filing of his petition or after the date of the filing of the petition. The Debtor filed his petition for relief under Chapter 7 with this court on May 29, 1982.[6] The Trustee states that the language used by the Ohio bankruptcy court indicated that the Debtor's fraudulent conduct continued up until the time of the trial

---

5. 11 U.S.C. § 727(a)(2) provides as follows:
 (a) The court shall grant the debtor a discharge, unless—
 (2) the debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed
 (A) property of the debtor, within one year before the date of the filing of the petition; or
 (b) property of the estate, after the date of the filing of the petition;

6. The Debtor's petition is on file in the Bankruptcy Clerk's Office and is a matter of record. The file stamp on the petition indicates that it was filed with this court on May 29, 1982. However, paragraph 1 of the Complaint filed by the Trustee and admitted in the Debtor's Answer, states that the Debtor filed a voluntary petition under Chapter 7 on December 30, 1983. This discrepancy can only be assumed to be an oversight on the part of the Trustee and the Debtor.

which was held one month prior to the time the Debtor filed his individual Chapter 7 petition. However, the Trustee fails to cite any portion of the Ohio bankruptcy court's opinion which supports their proposition.

The decision by the Ohio bankruptcy court is dated September 17, 1982 with a judgment being entered on September 24, 1982. This court is unable to ascertain from the Ohio bankruptcy court decision the dates of the trial. In addition, the language of the Ohio bankruptcy court addresses Mr. Overmyer's conduct with references to dates well over the one year statutory period set forth in § 727(a)(2)(A). For example, the Ohio bankruptcy court found that "[d]uring calender year 1980 alone, Mr. Overmyer took $37,235 in cash out of Telecasting through this petty cash scheme." *Hadar Leasing International Co., Inc. v. D.H. Overmyer Telecasting Co. (In re Overmyer Telecasting Co., Inc.)* 23 B.R. at 880. The court also found that [t]he June 19, 1979, General Electric settlement was a fraud on the Bankruptcy Court, a misappropriation of Telecasting's assets by Mr. Overmyer and his agents, including Mr. Connery, and a fraudulent conveyance as to FNBB. *Id.* at 922. Absent a specific finding that the fraudulent actions of the Debtor occurred within one year prior to May 29, 1982, the date of the filing of the debtor's Chapter 7 petition, this court cannot apply collateral estoppel to meet the requirements of subsection (A) of. § 727(a)(2).

■ The court now turns to the trustee's next argument to determine whether the Ohio bankruptcy court determined that the debtor owned an equitable interest in Hadar.

■ The Ohio court found that Mr. Overmyer was the controlling force behind all of the corporations located at 3 Park Avenue. *Hadar Leasing International Co., Inc. v. D.H. Overmyer Telecasting Co. (In re Overmyer Telecasting Co., Inc.)* 23 B.R. at 888. It also found that the debtor made important decisions about the acquisition of equipment by Hadar. *Id.* at 889. However, the issue of the Debtor's eq-

uitable interest in Hadar was not actually litigated in the Ohio bankruptcy court or determined by the Ohio bankruptcy judge. Therefore, the test enunciated by the *Ross* court has not been met with regard to the issue of the Debtor's equitable interest in Hadar. Even if the Debtor owned an equitable interest in Hadar, this court cannot imply that there was an intent by the debtor to hinder, delay or defraud a creditor by the simple omission of that interest from his schedules. The requisite intent to hinder, delay or defraud must be actual intent; constructive or presumed fraudulent intent cannot be the basis for the denial of a discharge. *Devers v. Bank of Sheridan, Montana (In re Devers)*, 759 F.2d 751, 757 (9th Cir.1985); *Bank of Pennsylvania v. Aldman (In re Aldman)*, 541 F.2d 999, 1003 (2d Cir.1976).

### Count 2—Denial of Discharge under 11 U.S.C. § 727(a)(4)(A)

■ The Trustee's Motion for Summary Judgment on Count 2 for a denial of the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(4)(A) [7] is also denied. There has never been a finding in any of the prior Overmyer decisions relied upon by the Trustee that the Debtor holds an equitable interest in any of the Overmyer companies. Furthermore, § 727(a)(4)(A) requires a finding that the Debtor knowingly and fraudulently made a false oath or account in connection with his present bankruptcy case. Any fraudulent conduct adjudicated in the prior Ohio bankruptcy proceeding was based upon Mr. Overmyer's conduct prior to his filing his current individual, bankruptcy petition. Therefore, this court must have an opportunity to hear evidence to determine Mr. Overmyer's motives and state of mind at the time the alleged equitable interest in Hadar was omitted from the Debtor's bankruptcy schedules.

■ The Debtor argues that even if the Debtor had an equitable interest in some of the Overmyer Companies, the asset would

---

7. 11 U.S.C. § 727(a)(4)(A) provides as follows:
 (4) the debtor knowingly and fraudulently, in or in connection with the case—

 (A) made a false oath or account;
 . . . .

have no value to the debtor or the estate. The Debtor asserts that his interest would be subordinate to the First National Bank of Boston, the taxing authorities, his creditors and the creditors of Hadar thus, leaving him with no interest in the entities. However, a false oath regarding valueless assets will constitute a material omission which can lead to the denial of a debtor's discharge. *See In re Robinson*, 506 F.2d 1184 (2d Cir.1974); *Diorio v. Kreisler-Borg Construction Co.*, 407 F.2d 1330 (2d Cir.1969).

■ Furthermore, this case is readily distinguishable from *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616 (11th Cir.1984) and *Boroff v. Tully (In re Tully)*, 818 F.2d 106 (1st Cir.1987) relied upon by the Trustee because this court, unlike the *Chalik* and *Tully* courts, has not had an opportunity to hear evidence on the issues of the Debtor's knowing and fraudulent state of mind. Absent proof on these issues, this court cannot deny a debtor's discharge under 11 U.S.C. § 727(a)(4)(A).

### Count 3—Denial of Discharge under 11 U.S.C. § 727(a)(4)(B)

■ The Trustee asserts that by listing at least 25 Overmyer Corporations in his schedules of unsecured debts, the Debtor knowingly and fraudulently presented or used a false claim which actions mandate a denial of the debtor's discharge pursuant to 11 U.S.C. § 727(a)(4)(B).[8]

The Ohio court found that:

Mr. Overmyer's control of the various Overmyer companies, including TOC, DHO, ODS, Hadar, ISLI, Jeebs, AGG, Omega ... is so pervasive that the unity of interest between Mr. Overmyer and these corporations makes it inequitable to treat the corporations as separate legal entities. Mr. Overmyer is, therefore, liable for the obligations of every such corporation, and every such corporation is, therefore, liable for the obligations

both of Mr. Overmyer and of every other corporation.

*Hadar Leasing International Co., Inc. v. D.H. Overmyer Telecasting Co. (In re D.H. Overmyer Telecasting Co., Inc.)* 23 B.R. at 930.

The Trustee argues that because of this finding, the Debtor and these corporations are one entity and any claim made by the corporations in the Debtor's bankruptcy case would actually be a claim by the Debtor, himself. It is undisputed that based on the Ohio bankruptcy court's decision, Mr. Overmyer is personally liable for all of the obligations of each of his corporations which were the subject of the Ohio bankruptcy court action. However, this personal liability would not necessarily preclude the debtor from listing these corporations on his schedules of unsecured claims. As provided in 11 U.S.C. § 523(a)(3), "[a] discharge under 727 ... of this title does not discharge an individual debtor from any debt neither listed nor scheduled under section 521(1) of this title, ... in time to permit ... timely filing of a proof of claim. Section 101(11) of 11 U.S.C., defines a debt as a liability on a claim and a claim, as defined by 11 U.S.C. § 101(4)(A) includes a right to payment whether that right is disputed, reduced to judgment, contingent or unmatured. This court cannot imply that by simply attempting to preserve his right to a possible discharge on claims of any of these 25 corporations, the Debtor's actions rise to the level of knowing or fraudulent conduct. Therefore, the Trustee's Motion for Summary Judgment as to Count 3 of the Complaint is denied.

### Count 4 and Count 5—Denial of Discharge under 11 U.S.C. § 727(a)(3) and § 727(a)(7)

■ The Trustee next urges that summary judgment is appropriate as to Counts 4 and 5 of the Complaint which seek to deny the Debtor's discharge pursuant to

---

8. 11 U.S.C. § 727(a)(4)(B) states as follows:
(a) The court shall grant the debtor a discharge, unless—
 (4) the debtor knowingly and fraudulently, in or in connection with the case—

(B) presented a false claim;
 . . . .

§ 727(a)(3) and § 727(a)(7).[9] In order to prevail on a cause of action under 11 U.S.C. § 727(a)(7), the Trustee must show that the Ohio bankruptcy court found that the Debtor committed the acts complained of within one year of the filing of his personal bankruptcy petition. However, the findings of the Ohio bankruptcy court do not specify the exact dates the debtor's concealments and falsifications occurred. Because the issue of the one year period involving the Debtor's actions was never litigated or determined, the doctrine of collateral estoppel cannot be applied to meet the elements for denial of the debtor's discharge as set forth in 11 U.S.C. § 727(a)(7). Therefore, the Trustee's Motion for Summary Judgment as to Counts 4 and 5 is denied.

### Count 6—Denial of Discharge under 11 U.S.C. §§ 727(a)(4) and 727(a)(7)

 The Debtor filed a proof of claim in the bankruptcy case of *In re D.H. Overmyer Telecasting Co., Inc.*, on behalf of Hadar, on or about August 7, 1981. The Trustee asserts that the proof of claim was false and that the filing of the proof of claim was done in a knowing and fraudulent manner in contravention of 11 U.S.C. § 727(a)(4) and § 727(a)(7).[10] This court agrees and accordingly, the Trustee's Motion for Summary Judgment is granted to deny the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(7) and § 727(a)(4).

The purpose of 11 U.S.C. § 727(a)(4)(B) is to prevent fraud by the presentation of inflated or fictitious claims or use of such claims. *3 Collier on Bankruptcy,* ¶ 727.05 at 727–66 (15th ed. 1990). The claim filed by the Debtor, on behalf of Hadar, in the case of *In re D.H. Overmyer Telecasting Co., Inc.*, is the exact type of fictitious claim 11 U.S.C. § 727(a)(4)(B) was designed to prevent.

As set forth in 11 U.S.C. § 727(a)(7), the Debtor's discharge will be denied if the Debtor committed an act set forth in 727(a)(4), concerning an insider, in connection with another bankruptcy case within one year from the filing of the Debtor's petition. The Debtor filed a proof of claim for $859,481.80, in the *In re D.H. Overmyer Telecasting Co., Inc.* bankruptcy case on behalf of Hadar on August 7, 1981, which was within one year from May 29, 1982. Furthermore, the Debtor was found to control all of the plaintiffs in the Ohio bankruptcy court action which included Hadar and D.H. Overmyer Co., Inc. *Hadar Leasing International, Inc. v. D.H. Overmyer Telecasting Co., Inc. (In re D.H. Overmyer Telecasting Co., Inc.)* 23 B.R. at 829. This finding places the Debtor in the position of being an insider as defined by 11 U.S.C. § 101(30)(B)(iii).[11] In addition, the Ohio bankruptcy court found that rather than Hadar being owed money from D.H. Overmyer, Hadar actually owed mon-

---

9. 11 U.S.C. § 727(a)(3) and § 727(a)(7) provides as follows:
 (a) The court shall grant the debtor a discharge, unless—
 (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;
 (7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider;
 . . . .

10. 11 U.S.C. §§ 727(a)(4) and 727(a)(7) provide as follows:

 (a) The court shall grant the debtor a discharge, unless—
 (4) the debtor knowingly and fraudulently, in or in connection with the case—
 (A) made a false oath or account;
 (B) presented or used a false claim;
 (7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider:
 . . . .

11. 11 U.S.C. § 101(30)(B)(iii) provides as follows:
 (30) "insider" includes—
 (C) if the debtor is a corporation—
 (iii) person in control of the debtor;
 . . . .

ey to D.H. Overmyer. The Ohio bankruptcy court's findings are as follows:

**20.4 Amount Hadar Owes Telecasting.** Since the Hadar leases were fraudulent shams designed solely to bleed money out of Telecasting, the amount due from Hadar to Telecasting is the difference between (1) the total payments that Telecasting made to or on behalf of Hadar, and (2) the total payments that Hadar made to or on behalf of Telecasting. Telecasting paid $3,191,909.01 to or on behalf of Hadar for the period January 1, 1976, through January 31, 1981. This amount consists of: $2,779,368.26 payments that Telecasting made directly to Hadar; $244,761.97 payments that Telecasting made to Jeebs on the account of leases; $82,562.64 payments that Telecasting made to GE on obligations of ISLI and Hadar; $19,626.95 miscellaneous payments that Telecasting made on behalf of Hadar; and $65,589.19 petty cash withdrawals from Telecasting for use by Hadar. The following payments were made by Hadar to or on behalf of Telecasting: $496,683.24 representing Hadar Payments to vendors on equipment leased to Telecasting; $36,137.21 representing Hadar payments for equipment purchased or services rendered to Telecasting which were not covered by a lease; $73,048.74 representing Hadar payments to Hundred East for interim interest payments pertaining to equipment of leases H–1044 and H–1045; and $65,800 representing Hadar payments directly to Telecasting. The total of the foregoing payments is $671,688.99. Subtracting $671,688.99 from $3,191,909.01, Hadar owes Telecasting $2,520,240.02

**20.5 Hadar's Proof of Claim.** Hadar filed a proof of claim based on the patently unwarranted assumption that the balance between Telecasting and Hadar on September 1, 1979, was zero. Even Hadar's own post-petition set of books

shows that as of that date, Hadar owed Telecasting $376,835.04.

23 B.R. at 868–69 (references to transcripts and exhibits omitted).

\* \* \* \* \* \*

(50) Hadar's proof of claim is fraudulent and is rejected.

23 B.R. at 932.

In addition to the findings of the Ohio bankruptcy court, there was a separate case, *United States v. Overmyer*, 899 F.2d 457 (6th Cir.1990), wherein Overmyer's conviction in the United States District Court for the Northern District of Ohio on one count of filing a false proof of claim in bankruptcy in violation of 18 U.S.C. § 152, ¶ 4 was upheld by the Court of Appeals for the Sixth Circuit. *Id.* at 465.

Based upon the findings of the Ohio bankruptcy court and the Sixth Circuit Court of Appeals, it is clear that the Debtor's knowing and fraudulent conduct in connection with the filing of the proof of claim on behalf of Hadar in the bankruptcy case of *In re D.H. Overmyer Telecasting Co., Inc.* is the same; it was actually litigated; it was determined by a valid and final judgment and the determination was essential to the prior judgment. Therefore, the use of collateral estoppel to deny the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(7) and § 727(a)(4) is appropriate.

*Count 7—Denial of Discharge under 11 U.S.C. § 727(a)(5)*

■ The trustee's Motion for Summary Judgment which seeks to deny the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(5) [12] is denied. The issue of the Debtor's loss of assets or deficiency of assets to meet his liabilities was not litigated in the prior Overmyer proceedings. As a result, the *Ross* test for the use of collateral estoppel has not been met and applica-

---

**12.** 11 U.S.C. § 727(a)(5) provides as follows:
(a) The court shall grant the debtor a discharge, unless—
 (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;
 . . . .

tion of the collateral estoppel is inappropriate.

*Count 8—Denial of Discharge under 11 U.S.C. § 727(a)(3)*

Finally, the Trustee maintains that the Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(3) because of the Debtor's involvement in concealing and falsifying books and records from which his financial condition and business transactions can be determined. The issue of the concealment and falsification of books, documents and records, by the Debtor, from which his business transactions might be ascertained was actually litigated and determined by a valid and final judgment and its determination was essential to the prior judgments. The Ohio bankruptcy court's findings were as follows:

\* \* \* \* \* \*

The creation of fictitious corporate records and false books of account, and the destruction of accounting records, by the Overmyer organization in general and by Mr. Overmyer, Mr. Connery and Mr. Chi in particular were frauds on FNBB.

23 B.R. at 930–31.

\* \* \* \* \* \*

The service agreements with Hadar are back dated fabrications and, like the service agreements made directly with Telecasting, were engineered by Mr. Overmyer to siphon and fraudulently transfer, for his personal use, enormous sums of money from Telecasting for grossly unfair consideration ... The record before this Court demonstrates that the payments on the leaseholds at 3 and 4 Park Avenue came from Telecasting and were transferred by Mr. Overmyer with actual intent to defraud FNBB.

23 B.R. at 918.

\* \* \* \* \* \*

The services agreements between Telecasting and the service companies and between Hadar and the service companies are shams designed to conceal the looting of Telecasting by Mr. Overmyer.

23 B.R. at 922.

\* \* \* \* \* \*

The Hadar leases are shams designed to conceal the looting of Telecasting by Mr. Overmyer.

23 B.R. at 930.

Based upon these findings, the Debtor is collaterally estopped from relitigating the issues of the concealment and falsification of his books and records from which his financial condition and business transactions might be ascertained. The Debtor's discharge is denied pursuant to 11 U.S.C. § 727(a)(3).

### CONCLUSIONS OF LAW

1. This court has jurisdiction of the parties and subject matter pursuant to 28 U.S.C. § 1334 and § 157(a). This is a core matter in accordance with 28 U.S.C. § 157(b)(2)(J).

2. The Trustee's Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56, made applicable to these proceedings by Bankruptcy Rule 7056, is granted as to Counts 6 and 8.

3. The Trustee's Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56, made applicable to these proceedings by Bankruptcy Rule 7056, is denied as to Counts 1, 2, 3, 4, 5 and 7.

4. The Debtor's discharge is denied pursuant to 11 U.S.C. §§ 727(a)(3), 727(a)(4) and 727(a)(7).

SETTLE ORDER ON NOTICE.