**In re Frank Rice POPE, Jr., Debtor.**

**Gene BULAS, Plaintiff,**

**v.**

**Frank Rice POPE, Jr., Defendant.**

**Bankruptcy No. 81–01675–BKC–TCB.**
**Adv. No. 82–0028–BKC–TCB–A.**

United States Bankruptcy Court,
S. D. Florida.

Feb. 19, 1982.

---

Ronald Gossett, Hollywood, Fla., for plaintiff.

Thomas P. Quinn, Fort Lauderdale, Fla., for defendant.

Douglass Wendel, Trustee.

Daniel Bakst, West Palm Beach, Fla., for Trustee.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Bankruptcy Judge.

A creditor opposes the debtor's discharge under 11 U.S.C. § 727(a)(2), (3), (4) and (5). (C.P. No. 1). The debtor has answered. (C.P. No. 3). The matter was tried on February 16.

The debtor is a 53 year old former owner of a successful moving and storage business, which he sold in February 1979 for $245,000 in an arm's length transaction. The principal asset of the business was real property. He took back $181,000 in two mortgage notes for the purchase price. The mortgages are being paid without default and are adequately secured by the real property.

In May, 1980, the debtor married a much younger woman who had been recently divorced with custody of four young children. She insisted on a pre-marital agreement which transferred to her the two mortgage notes, which then had a principal balance of about $150,000. That assignment was effected in writing before the marriage and was more formally memorialized several weeks later. The only consideration for this assignment was the marriage.

During the marriage, a $65,000 home was purchased with $13,000 cash and mortgage payments, both of which were derived from the two mortgages assigned to the wife. Title to the house was taken in the wife's name and remains in her name.

These parties were divorced in March 1981. A divorce settlement confirmed the pre-marital agreement and assignment and transferred to the wife an automobile and the debtor's furniture. In effect, therefore, the debtor has transferred to his wife of nine months everything he owned.

A month after the divorce, the debtor moved back into the house as a tenant living in a separate room. He filed for bankruptcy in October 1981 and left the house a few weeks before the trial of this matter.

The debtor's former attorney, who obtained a judgment for fees owed him in connection with the sale of the business, has testified that the debtor employed him to fend off creditors and on many occasions sought advice as to ways to avoid creditors.

Plaintiff, who understandably suspects the debtor's good faith in the face of the foregoing circumstances, has opposed the discharge with general allegations under four subsections. At trial, however, plaintiff abandoned his charge under § 727(a)(2) [fraudulent transfer], because the debtor's transfers to his wife occurred more than a year before bankruptcy and, therefore, are not a predicate for denial of discharge under that subsection.

There is no evidence in the record before me and no specific allegation to support plaintiff's general allegation that the debtor concealed, destroyed, falsified or failed to keep financial records. I find, therefore, that plaintiff has failed to prove his charge under § 727(a)(3).

■ Similarly, there is no specific allegation nor is there any proof that the debtor made a false oath or account in this case within the scope of § 727(a)(4)(A). However, plaintiff has also alleged that the debtor presented or used a false claim, a ground for denial of discharge under § 727(a)(4)(B). The only evidence offered to support this allegation is that the debtor listed alimony owed to a previous wife, which at best represented a dubious liability. I find no evidence either in this transaction or any other that the debtor "knowingly and fraudulently ... made a false oath or account" in this case.

Plaintiff, finally, has alleged that the debtor does not satisfactorily explain the loss or deficiency of his assets. A failure to do so can bar discharge under § 727(a)(5). The allegation is insufficient. 4 *Collier on Bankruptcy* (15th ed.) ¶ 727.08 n.4. However, I have permitted the plaintiff to amend his pleading to conform to his proof. B.R. 715.

■ In essence, plaintiff charges that the debtor's divestiture of all his assets under the suspicious circumstances described above suggests a fraudulent transfer and, therefore, an insufficient explanation of the debtor's present insolvency. I do not believe that a fraudulent transfer effected more than a year before bankruptcy can be the basis for denial of discharge, indirectly under the provisions of § 727(a)(5). Plaintiff's theory deprives the one year restriction in § 727(a)(2)(A) of any actual operative effect, an interpretation of the statute we must avoid if possible. *General Motors Acceptance Corp. v. Whisnant*, 5 Cir. 1968, 387 F.2d 774, 778.

■ Secondly, the debtor has convinced me that he did not transfer his assets to his wife with the intent of defrauding creditors by a secret mutual arrangement that she would merely hold those assets for their joint benefit.

■ It is settled, at least in this State, that a bona fide pre-marital settlement supported by no consideration other than marriage is valid. As stated in *Green v. Casper*, Fla.App.1977, 346 So.2d 1204, 1205:

"Moreover, a conveyance of property for the consideration of marriage pursuant to an ante-nuptial settlement is not fraudulent as to creditors on the ground of want of consideration and even though made with a fraudulent design by the transfer [or], it should not be set aside without the clearest proof of the wife's participation in the intended fraud."

The debtor was an alcoholic under the treatment of a psychiatrist. He had been married four times. Before this last marriage, the parties jointly consulted the psychiatrist who recommended a premarital agreement including the transfer of all the debtor's assets to the wife. Although, the debtor then appeared to have achieved self-control, the wife who had been burned once quite understandably sought security and protection for her children. She had no resources after the recent failure of her earlier marriage of 14 years. She had no income other than child support of $100 a week and her secretarial salary of $200 a week. She may have hoped for the best, but she was determined not to end up with nothing again. I believe that he was confident that he could either straighten himself out this time or persuade her to put up with him if he could not. The debtor demonstrated once again that there is no fool like an old fool. She had no intention of living

with a drunk and when he fell off the wagon, she promptly divorced him.

The fact that she provided him with food and shelter for some months after the divorce does not convince me that she is part of a plot to defraud creditors, but rather that she found it difficult then to turn away a penniless drunk who gave her everything he had. I doubt she will find it that difficult the next time.

I find, from this record, that the transfers to the wife were not made with an intent to defraud creditors, but rather for the purpose of marrying a young, attractive wife and acquiring a family which he hoped would bring him a stability he had not been able to achieve.

As is required by B.R. 921(a), a separate judgment will be entered dismissing the complaint. Each party shall bear his own costs.