In re Michael ROSENZWEIG, Debtor.

**A.V. Reilly International,
Ltd., Plaintiff,**

**v.**

**Michael Rosenzweig, Defendant.**

**Bankruptcy No. 97 B 38192.
Adversary No. 98 A 01434.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Aug. 19, 1999.

David E. Cohen, David E. Cohen, P.C., Chicago, IL, for Plaintiff.

Jessica Tovrov, Adam B. Goodman, Peterson & Ross, Chicago, IL, for Defendant.

### *MEMORANDUM OPINION*

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the complaint of A.V. Reilly International, Ltd. ("Reilly") objecting to the discharge of the Debtor, Michael Rosenzweig (the "Debtor"), under 11 U.S.C. §§ 727(a)(4)(A), (a)(4)(B) and (a)(2)(A) and requesting that the debt owed by the

Debtor to Reilly be found nondischargeable under 11 U.S.C. §§ 523(a)(4) and (a)(6). For the reasons set forth herein, the Court, having considered all of the evidence adduced at trial, sustains the objections to discharge under §§ 727(a)(4)(A) and (a)(2)(A), but overrules the objection under § 727(a)(4)(B). The Court also finds the debt non-dischargeable under § 523(a)(6), but dischargeable under § 523(a)(4). The Court finds that the Debtor filed materially false Schedules, did not disclose a significant debt to an insider and several assets and transfers. He has also willfully and maliciously injured the property interests of Reilly.

## I. *JURISDICTION AND PROCEDURE*

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J).

## II. *FACTS AND BACKGROUND*

The Court has previously written an Opinion is this matter which contains most of the background and many of the facts and need not be repeated at length here. On July 12, 1999, the Court denied Reilly's motion for summary judgment because there were material issues of disputed fact and not all of the elements for proper application of the doctrine of collateral estoppel were present. *See A.V. Reilly International, Ltd. v. Rosenzweig ( In re Rosenzweig)*, Ch. 7 Case No. 97 B 38192, Adv. No. 98 A 01434, 1999 WL 569446 (Bankr.N.D.Ill. July 12, 1999). The Court incorporates that Opinion by reference.

The parties proceeded to trial on the merits on all five counts of the complaint. Two witnesses testified: Tarick Loutfi ("Loutfi"), who was the Debtor's original bankruptcy attorney and his co-counsel in the pre-petition state court litigation, and the Debtor. The deposition of an absent witness was admitted under Federal Rule of Evidence 804(a)(5) and (b)(1).

Loutfi testified that his practice concentrates in corporate, contract, real estate and probate law, and only occasionally in bankruptcy matters. Prior to taking the Debtor's case, which was originally filed as a Chapter 13, Loutfi had only filed Chapter 7 cases for debtors. Loutfi, a friend of the Debtor, incorporated Logistics Management International, Inc. ("LMI") and prepared and drafted its articles of incorporation, bylaws, minutes, resolutions and share certificates, and was familiar with its business operations. He served as co-counsel to the Debtor and LMI in the state court litigation which resulted in a money judgment and injunction against the Debtor. He also drafted the various loan documents by which LMI extended a revolving line of credit to the Debtor, secured by the Debtor's stock in LMI, to finance the appeal from the state court judgment, the attorney's fees and costs incidental thereto and this bankruptcy case.

Loutfi testified that he prepared the Debtor's original Schedules and Statement of Financial Affairs based on information supplied by the Debtor. The full amount of the LMI line of credit was listed, rather than the much smaller amount of the actual advances made. Loutfi thought that was the appropriate way to schedule that debt. This case was the first one for Loutfi in which a debtor had a debt in the nature of a revolving line of credit. Though incorrectly and incompletely scheduled, it was never Loutfi's intent to hide the Debtor's line of credit arrangement with LMI. After the petition was filed and Reilly's counsel raised the question of the improper scheduling of the LMI debt, Loutfi advised the Court of the true nature and extent of the debt. Loutfi did not recall whether the Debtor ever advised him, prior to the filing of the petition, that he owed his father $25,000.00. Loutfi pointed out to the Debtor that the Schedules and Statement of Financial Affairs

were signed and filed under pain of perjury.

The Debtor also testified. He is a resident alien employed in the freight forwarding industry. He was formerly employed at Reilly as its "Number 2" man as vice-president of its freight forwarding business. Anticipating that he might be squeezed out by the advent of another employee, he began thinking about starting his own freight forwarding business and discussed this with two fellow employees who later joined him in forming and running LMI. LMI took some of Reilly's customers and business with it. The Debtor knew that this would reduce Reilly's sales volume. In 1996, he estimated LMI's gross revenues at $2.5—3 million, which reduced Reilly's business accordingly. Upon entry of the state court judgment and injunction against him, he resigned his office and employment with LMI and subsequently entered into negotiations with LMI culminating in the revolving line of credit arrangement.

Loutfi explained to him that he had to schedule all of his assets and liabilities. The Debtor testified that he understood that the Schedules and Statement of Financial Affairs were signed and filed under pain of perjury. He further stated that he did not tell Loutfi of the $25,000.00 unsecured debt he owed his father. He and his non-debtor spouse had transferred their home into tenancy by the entirety within one year pre-petition. He valued his stock in LMI at $18,500.00, based on his conversation with LMI's accountant, although he did not see LMI's financial statements, nor did he know exactly how much LMI had advanced on the line of credit.

As a result of the instant adversary proceeding, the Debtor retained a law firm and then a subsequent one to defend him. On the eve of trial, the second law firm filed amended Schedules. These amended Schedules listed the value of the LMI stock as unknown and disclosed the unsecured debt to the Debtor's father. The Debtor further testified that he failed to

disclose on the Schedules that he owned two computers, not just one. Although he reviewed the Schedules and Statement of Financial Affairs, the Debtor stated that he did not notice the omission of the $25,-000.00 debt to his father. His income tax refunds, owed but not received at the time of the filing of the petition, have not been scheduled to date. He acknowledged at trial that there were mistakes and oversights in the Schedules, and claimed disappointment and frustration that his prior attorneys had not initially correctly prepared them.

The parties submitted their respective designations of portions of the deposition of Vincent Ted Homes ("Homes"). Homes left Reilly's employ in April or May 1996 and thereafter started his employ at LMI as its vice-president, treasurer and one of its minority shareholders. After the entry of the judgment against the Debtor in December 1997, Homes, on behalf of LMI, agreed to offer the Debtor up to $60,-000.00, secured by a pledge of the Debtor's 450 shares in LMI, in order to finance the appeal.

### III. DISCUSSION

#### A. Whether the Objections to Discharge Under 11 U.S.C. § 727(a)(2)(A) and (a)(4)(A) Should Be Sustained

■ Reilly has proven by a preponderance of the credible evidence that its objections to discharge under § 727(a)(4)(A) and (a)(2)(A) should be sustained. As noted in the Court's prior Opinion, there were two disputed elements under § 727(a)(4)(A): that the Debtor knew that the statements on his Schedules and Statement of Financial Affairs were false; and that he possessed the requisite scienter of either knowingly intending to file false papers or acted with reckless indifference to the truth. On the first element, the evidence at trial established that the Debtor knew at all times of the substantial debt he owed his father. Loutfi, however, was not made aware of that debt until sometime

after the original Schedules were filed. The Debtor was also aware that had over $5,000.00 in tax refunds owed to him which he did not disclose. He also knew that he had two computers, not just the one disclosed, but another mentioned for the first time at trial. Although the Debtor is not a naturalized United States citizen, he is a very intelligent and experienced businessman knowledgeable in his industry and fluent in both his native tongue and English. Loutfi made him aware of the need to fully disclose all his assets and liabilities and that his bankruptcy papers were filed under pain of perjury. The Court finds that he knew his Schedules were materially false and incomplete.

The Court also finds from the totality of the evidence that Reilly has met its burden to show that the Debtor had the requisite scienter to either intentionally falsify the Schedules and Statement of Financial Affairs or that the omissions were the product of reckless indifference to the truth. While perhaps an interfamilial debt of a small sum might be innocently overlooked, say $250.00 or maybe even $2,500.00, it strains credibility past the breaking point for the Debtor to claim he did not notice the $25,000.00 debt owed to his father was not scheduled when it was that money he used to acquire his initial shares in LMI. He was aware of that material and substantial unsecured debt at all times. Moreover, the tax refund was never scheduled and thus constitutes another significant omission. Furthermore, although he duly scheduled that his home was owned in tenancy by the entirety, he failed to indicate on his Statement of Financial Affairs that it was conveyed within the year pre-petition.

Schedule B contains a line item for tax refunds. (Item 17). The Debtor checked none on the original Schedule B. Only one computer was listed on Schedule B (Item 4). Moreover, only one unsecured debt ($8,000.00), other than the debt to LMI, was listed on Schedule D. The Debtor failed to list the debt to his father until July 6, 1999, when he filed an amended Schedule D, two weeks prior to the commencement of trial. That the home was apparently reconveyed into tenancy by the entirety within the year pre-petition was not disclosed to the Court prior to the trial testimony.

These are all material omissions which the Court cannot overlook and excuse as attributable to either Loutfi's inexperience or the first law firm's oversight. The responsibility rests with the Debtor. In the aggregate, these omissions are material and are fatal to the Debtor's discharge under § 727(a)(4)(A). The Court rejects Reilly's arguments regarding the inaccurate original scheduling and explanation of the LMI debt. This was attributable to Loutfi's mistake and inexperience which he attempted to correct at an early stage.

 In addition, the continuing concealment of the second computer, the tax refund and the transfer of the home into tenancy by the entirety serves as grounds for the objection to discharge under § 727(a)(2)(A). Debtors sometimes intentionally omit assets from their schedules in order to conceal them. In such circumstances, a debtor can be denied a discharge either for concealing assets under § 727(a)(2) or for making a false oath under § 727(a)(4), or on both grounds. *See* R. Ginsberg and R. Martin, 1 *Ginsberg & Martin on Bankruptcy* § 11.02[E] at 11–31 (4th ed.1999).

 The Debtor relies on the advice of counsel defense as to the misrepresentations in his original Schedules and Statement of Financial Affairs and cites a number of cases for that point. Of the cited cases only one is potentially binding upon this Court: *In re Breitling*, 133 F. 146 (7th Cir.1904). There the referee found that the debtor was unaware that unscheduled lumber was still in his possession and overruled an objection to discharge for failure to schedule the asset on advice of counsel. The district court agreed and an appeal was taken to the Seventh Circuit. The

Seventh Circuit, in reversing the order granting discharge, concluded that the debtor purposely retained and concealed from his creditors that to which he was not entitled. The court noted they were "indisposed to give countenance in the slightest degree to any act which shall withhold from creditors any part of the estate of a bankrupt which lawfully he should devote to the payment of his debts." *Id.* at 150. With respect to the advice of counsel defense, the *Breitling* court opined:

> Without question the claim against the Waldheim Cemetery Company should have been scheduled. This the referee concedes in his report. It was knowingly and designedly omitted by the bankrupt. This is conceded by him. But he insists that it was so done upon the advice of counsel. But advice of counsel cannot excuse violation of law. It may mitigate the act, according to the character of the advice and circumstances under which it is given. If the omission here were in the exercise of a supposed right under advice taken and given in good faith, the bankrupt might be absolved of the charge of making a false oath or of designedly concealing his estate from his creditors. To work such result, however, the facts must be fully in good faith stated to counsel, and the act charged done innocently, and believing that he had been correctly advised. Whether the bankrupt here stands in such plight, depends upon the facts of the case, judged in the light of all the surrounding circumstances.

*Id.* at 148–49.

■ Thus, the *Breitling* court placed substantial limits on the advice of counsel defense by requiring that the debtor must fully state the facts to counsel and that his intent must be "innocent" with the belief that counsel has correctly advised the debtor. It would thus appear under *Breitling* that if a debtor has not fully disclosed the true facts to his counsel, he does not have an innocent intent.

From the evidence adduced in the matter at bar, the Court finds that the Debtor did not initially disclose to Loutfi the debt to his father, the second computer or the tax refund, although he knew of their existence and for a time concealed them. Thus, under *Breitling*, reliance on the advice of counsel defense fails. The Debtor cannot properly rely on this defense regarding errors in the Schedules when the Debtor declared under penalty of perjury that he read the Schedules, and to the best of his knowledge they were true and correct. *See Morton v. Dreyer (In re Dreyer)*, 127 B.R. 587, 597–98 (Bankr.N.D.Tex. 1991).

### B. Whether the Objection to Discharge Under 11 U.S.C. § 727(a)(4)(B) Should Be Sustained

The Court finds that the Debtor has not violated § 727(a)(4)(B) as there is no evidence that he has "presented or used a false claim." Reilly did not cite any case law, nor did it develop evidence on this theory at trial. Thus, it has forfeited the point. *See LINC Finance Corp. v. Onwuteaka*, 129 F.3d 917, 921 (7th Cir.1997); *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir.1990). The Court does not have a duty to research and construct legal arguments available to a party. *Head Start Family Educ. Program, Inc. v. Cooperative Educ. Serv. Agency 11*, 46 F.3d 629, 635 (7th Cir.1995).

There is sparse case law applying § 727(a)(4)(B). *See In re Overmyer*, 121 B.R. 272 (Bankr.S.D.N.Y.1990) (the debtor allegedly falsely listed at least 25 related corporations among his unsecured creditors whose corporate veils had been successfully pierced); *In re Cline*, 48 B.R. 581 (Bankr.E.D.Tenn.1985 ) (the debtor filed a falsely inflated proof of claim on behalf of his father-in-law without the claimant's authorization); *In re Pope*, 18 B.R. 125 (Bankr.S.D.Fla.1982) (the debtor allegedly falsely listed a debt for alimony owed to a former spouse).

■ The Court finds that the incorrect scheduling of the LMI debt arising from the line of credit extended to the Debtor was the product of Loutfi's mistaken belief as to the appropriate way to disclose that obligation, rather than the product of any attempted fraud on the part of the Debtor. Thus, this objection to discharge is overruled.

### C. Whether the Debt is Non–Dischargeable Under 11 U.S.C. § 523(a)(4)

■ Turning to the nondischargeability claims of Reilly, the Court finds that the preponderance of the evidence shows that although the Debtor was in a fiduciary relationship with Reilly and owed it the duties arising under Illinois corporate law as its vice-president, the record is devoid of any other showing that the Debtor was in a position of ascendancy over Reilly and its operations as required under § 523(a)(4) and *In re Marchiando,* 13 F.3d 1111 (7th Cir.1994). The mere existence of a state law fiduciary relationship may not be sufficient. *In re Woldman,* 92 F.3d 546, 547 (7th Cir.1996). The Debtor's status with Reilly is not enough to meet the requisite burden of proof.

The undisputed testimony of the Debtor that the arrival of a new employee, whose job functions overlapped or encroached on his, which led him to consider forming his own operation, leads to a fair inference that the Debtor was not in a position of ascendancy over Reilly. This conclusion is strengthened by the fact that the final straw for the Debtor was the last minute cancellation of a business trip he had scheduled for the United Kingdom. Had he been in a true position of ascendancy over Reilly, it is more likely that he would have been able to override such decision and go on the trip because he viewed it as important. Accordingly, Reilly's cause of action under § 523(a)(4) fails.

### D. Whether the Debt is Non–Dischargeable Under 11 U.S.C. § 523(a)(6)

■ Reilly has proven under § 523(a)(6) that the debt owed it by the Debtor was the produce of the Debtor's willful and malicious actions in violating the express non-competition, trade secret privilege protection, and non-solicitation covenants contained in his employment contract with Reilly. The state court found these duties survived the expiration of that contract and the Debtor violated them. The Court is now obliged to give the state court judgment full faith and credit pursuant to 28 U.S.C. § 1738. That judgment found that the Debtor caused injury to Reilly's property interests by his violation of the express covenants of the employment contract, and that his actions were contrary to the Illinois Trade Secrets Act.

For purposes of § 523(a)(6), the Court finds that the Debtor's actions were both willful and malicious under the heightened requirements of *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). The Debtor not only intended to commit the wrongful acts of violating the continuing covenants under the employment contract with Reilly by setting up LMI with two Reilly employees and taking some of the Reilly customers with them, he also intended to injure Reilly's property interests in its protected trade secrets by diverting to LMI business which otherwise would have gone to Reilly. The Debtor candidly admitted at trial that he knew what he was doing and what its effect upon Reilly would be. Thus, he intended to and did harm Reilly's protected property interests to the degree liquidated and quantified by the state court judgment. This is precisely the intentional tortious conduct required by *Geiger* and is not merely negligent or reckless conduct.

### IV. CONCLUSION

The Court, having considered all of the evidence adduced at trial, sustains the objections to discharge under §§ 727(a)(4)(A) and (a)(2)(A), overrules the objection under §. 727(a)(4)(B), and finds the debt nondischargeable under § 523(a)(6), but dischargeable under § 523(a)(4).

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.