In the Matter of Nicholas and
Penny STAMAT, Debtor.

William T. Neary, U.S.
Trustee, Plaintiff

v.

Nicholas and Penny Stamat,
Defendant.

Bankruptcy No. 07 B 13379.
Adversary No. 07 A 01278.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Sept. 24, 2008.

M. Gretchen Silver, Office of the U.S. Trustee, for Plaintiff.

David R. Herzog, Herzog & Schwartz PC, for Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JACK B. SCHMETTERER, Bankruptcy Judge.

The United States Trustee sued the Defendants, who are Debtors in their Chapter 7 Bankruptcy case, to bar their discharge.

Following trial, the following Findings of Fact and Conclusions of Law are made and entered:

### FINDINGS OF FACT

#### Stipulated Facts

1. Defendants Nicholas and Penny Stamat filed their voluntary petition for relief under Chapter 7 of the Bankruptcy Code on July 26, 2007. The Schedules, Statement of Financial Affairs and amendments were signed under penalty of perjury.

2. The U.S. Trustee timely filed a Complaint Objecting to Discharge on December 21, 2007.

3. According to their original Schedule I, the Defendants are self-employed by Dr. Nicholas Stamat's pediatric medical practice, DeStefano & Stamat Pediatrics, and have a combined net monthly income of $3,333.

4. Schedule I was amended on May 8, 2008 and shows Dr. Stamat's part-time employment with the Village of Thornton in the amount of $80.

5. On Schedule D, the Defendants list $1,227,491.38, most of which relates to two parcels of real estate listed on Schedule A: their residence in Chicago and another home in Dowagiac, Michigan.

6. Defendants list $363,114.87 on Schedule F in unsecured nonpriority claims, most of which is credit card debt, personal loans, or attorney fees.

7. The Defendants list $16,420.67 of personal property on Schedule B (see Exhibit A, Schedule B–Personal Property). Included in this amount is all of the stock in Defendants' two ongoing operating entities, Stamat Pediatrics and On Time Billing, both of which are valued at zero.[1]

---

1. Dr. Stamat's train collection was valued at $3,000 and Defendants' equity interest in

8. Schedule B, Question 8 requires Defendants to disclose, *inter alia*, all of their firearms and collections.

9. Defendants' original Schedule B, Question 8 disclosed a train collection valued at $3,000.

10. Defendants' Amended Schedule B, filed December 7, 2007, discloses two service revolvers valued at $200.

11. Defendants' original Statement of Financial Affairs does not list any transfers of assets (# 10) or business interests owned within six years of filing (# 18).

12. Defendants' Amended Statement of Financial Affairs, filed May 8, 2008, lists transfers of assets (# 10) and business interests owned within six years of filing (# 18).

13. At the time of filing the petition and at all times thereafter, Dr. Stamat worked as a part-time police officer for the Village of Thornton.

14. At the time of the filing of the petition, Dr. Stamat owned two service revolvers.

15. Penny Stamat holds a Bachelor's Degree in Math and Accounting from DePaul University.

16. Mrs. Stamat has served as a Controller for at least one business.

17. Within two years of the bankruptcy filing, Defendants paid Financial Group of Oak Brook $10,000 to settle pending litigation against Dr. Stamat.

18. DeStefano and Stamat L.L.C.'s name was changed to Stamat Pediatrics, L.L.C. on October 30, 2006.

19. Pre-petition, Mrs. Stamat formed a medical billing company, On Time Billing LLC, which she continues to operate.

20. Defendants refinanced their Michigan home on November 17, 2005 and on October 6, 2006.

21. Within the last six years, Dr. Stamat was either an officer, director, partner or managing executive or more than 5% equity holder of Stamat Pediatrics, L.L.C., f/k/a DeStefano and Stamat L.L.C.

22. Within the last six years, Mrs. Stamat was either an officer, director, partner or managing executive or 5% equity shareholder of On Time Billing LLC.

23. Within the last six years, Dr. Stamat was either an officer, director, partner or managing executive or a 5% equity holder of Meyer Medical Physician Group Ltd.

24. Within the last six years, Dr. Stamat was either an officer, director, partner or managing executive or 5% equity shareholder of 4425 E. 63rd Medical Center.

25. Within the last six years, Dr. Stamat was either an officer, director, partner or managing executive or 5% equity shareholder of Hoffman/Elk Grove Physicians Group Ltd.

### *Additional Facts Proved at Trial*

26. On November 14, 2007, the Trustee conducted the continued First Meeting of Creditors (§ 341 meeting).

27. At the § 341 meeting, Dr. Stamat testified that he worked as a part-time police officer for the Thornton Police Department.

28. This employment was not disclosed in the Defendants' original Schedules.

29. At the § 341 meeting, Dr. Stamat admitted that he owned two guns.

30. The two guns were not disclosed in the Defendants' original Schedules.

Point O'Woods Country Club was valued at $7,200, and Defendants had a security deposit of $1,620.67 for the office. The remaining

$4,500 of personal property included two households of furniture, their car and clothes.

31. At the § 341 meeting, Dr. Stamat confirmed that in September of 2005, he had paid $10,000 to Financial Group of Oak Brook to settle pending litigation against the Stamats.

32. The payment to Financial Group of Oak Brook was not disclosed in the Defendants' original Statement of Financial Affairs in response to Question 10.

33. One month after the § 341 meeting, on December 7, 2007, Defendants amended their Schedules A, B, C and D. Schedule B was amended to disclose the two guns. Defendants did not amend their Schedule I or Statement of Financial Affairs to specify Dr. Stamat's income from the Thornton Police Department or the payment of $10,000 to Financial Group made within less than two years before the bankruptcy filing.

34. On April 16, 2008, Defendants appeared for a 2004 examination at the Office of the United States Trustee ("U.S.Trustee"). Defendants also produced numerous documents, including tax returns, pursuant to a subpoena for documents issued by Plaintiff.

35. At the 2004 examination, Mrs. Stamat admitted that the Defendants had refinanced their Michigan home twice in the two years before filing their bankruptcy petition during the years 2005 and 2006, receiving total cash in excess of $90,000 from those two transactions. Those loan proceeds were deposited into the Stamats' personal account at the Fifth Third Bank. Those monies were used to run Dr. Stamat's medical practice or for living expenses of the Stamats.

36. Neither refinancing transaction was disclosed in the Defendants' original Statement of Financial Affairs, Question 10, even though both transactions were in the time period identified. Subsequent to disclosing those transactions to the United States Trustee, the Stamats submitted all related records in their possession to the United States Trustee.

37. At the 2004 examination, Defendants testified to ownership interests in the following Limited Partnerships during the six years before their bankruptcy filing:

a. Trailhead Land Investment L.P.

b. Eagle Crest Golf Club, Ltd. Partnership

Defendants also testified to ownership interests consisting of stock in the following companies during the six years before filing their bankruptcy case:

c. Windy City Investors LLC

d. Founders Hill Brewing Company Inc.

Neither of the Stamats were officers, directors, partners or managing executives of the latter two companies, and they owned less than 5% of the stock in each.

38. Defendants failed to disclose the four interests related in paragraph 37 in their response to Question 18 in their original Statement of Financial Affairs and in their Amended Statement of Financial Affairs, filed May 8, 2008. However, they testified as to those interests both at their Rule 2004 deposition and at the meeting of creditors on November 14, 2007.

39. Line 13 of the Stamat Schedule B disclosed their 100% ownership in DeStefano and Stamat L.L.C. n/k/a Stamat Pediatrics and On Time Filling, Inc., but that information was not repeated in response to Question 18 of Statement of Financial Affairs.

40. Although Defendants identified litigation against them that was pending in Cook County, they failed to disclose in either their original or their amended Schedules their Counterclaims filed in that litigation against Standard Bank and Trust in that litigation, Case No. 03 L 001965.

Defendants claim that they were unaware of those counterclaims filed by their counsel in that case, but offered no evidence (such as testimony by their counsel) to show that the counterclaims were filed without their knowledge or consent. The possible value of the counterclaims was not proven.

41(a). In response to Question 1 of their original Statement of Financial Affairs ("Statement"), Defendants listed their personal gross income for 2006 as $53,309. However, their personal tax returns show gross income from his medical practice as $265,012.

(b). Question 1 of their Statement read: "State the gross amount of income the debtor has received from employment, trade, or profession, or from operation the debtor's business, including part-time activities either as an employee or in independent trade or business ..." The term "in business" is defined on the face of the Official Form of the Statement of Financial Affairs. For an individual debtor, the definition is "for the purposes of the form if the debtor has been, within two years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time." Even though the Defendants did not use the Official Form, the U.S. Trustee contends that the Debtors should have included his practice income in their disclosed gross income figure.

(c) Defendants testified that Dr. Stamat's practice has no employees other than the Defendants, and Dr. Stamat described it as a "mom and pop" operation. Mrs. Stamat did not recall how she determined the gross income that Debtors disclosed in their Statement of Financial Affairs.

(d). Defendants' gross business income for 2006, was reported on their Form 1040 U.S. Income Tax return, line 12, as $20,559 (Def.Ex.19). However, the gross income received by the Stamat business entity, Stamat Pediatrics L.L.C. in that year was $265,012. The figure of $53,309 reported on bankruptcy schedules was said by Debtors in testimony to have been based on an estimate of amounts Defendants had been drawing from the business account.

### Defendants' Testimony at Trial

42. Schedule B did not originally list Dr. Stamat's two handguns because Penny Stamat (who supplied the information) believed that the guns were owned by the Village of Thornton.

43. Dr. Stamat testified in the § 341 meeting of creditors on November 14, 2007, that he owned the handguns. (Plaintiff's Ex. # 11, p. 25).

44. Defendants' Schedule B was amended on December 7, 2007 to reflect ownership of the two handguns.

45. Stamats say that the omission of the service revolvers in the original Schedules was not done with an intent to deceive anyone. (R.P. 84–85).

46. Stamats say that the omission of the service revolvers in the original Schedules was not done with the intent to conceal Dr. Stamat's ownership of these weapons.

47. Although Schedule I did not list Dr. Stamat's employment as a part-time police officer with the Village of Thornton, the business income of $3,333 listed on Schedule I included his income as a part-time police officer. (R.P. 87).

48. In July, 2007, Dr. Stamat's average monthly income as a part-time police officer was about $80. (R.P. 129).

49. At the creditors meeting on November 14, 2007, Dr. Stamat testified that he worked as a part-time police officer for the Village of Thornton. (Plaintiff's Ex. 11, p. 24).

50. On May 8, 2008, Schedule I and Question 1, of the Statement of Financial Affairs were amended to reflect Dr. Stamat's employment and income as a part-time police officer separately from his business income. (Defendants' Ex. # s 29 and 30).

51. Stamats say that the failure to schedule Dr. Stamat's income from his employment as a part-time police officer separately from his medical income in the original Schedules and Statement of Financial Affairs was not done with an intent to deceive either the Trustee or any creditor of this Estate. (R.P. 48). The Defendants did not intend to conceal Dr. Stamat's part-time income from the Trustee or from any creditor by lumping the business and part-time employment income together in the original Schedules and Statement of Financial Affairs, (R.P. 89).

52. Stamats say that they did not schedule the two refinances of their Michigan property in their original Answer to Question 10 of the Statement of Financial Affairs, because they did not understand that these were transfers of property. (R.P. 99).

53. Defendants amended Question 10, of the Statement of Financial Affairs on May 8, 2008 to reflect the two refinances of the Michigan property. (Defendants' Ex. # 30).

54. The monies from both refinances were deposited in the Stamats' personal account at the Fifth Third Bank.

55. The Stamats used the proceeds of the refinances to live on and to operate Stamat Pediatrics.

56. The Stamats provided the U.S. Trustee with all their available checking account records which reflected the use of some proceeds from the refinancing, in a disjointed and fragmented fashion.

57. None of the proceeds from refinancing were sent overseas, to relatives, hid, secreted or placed in a safety deposit box.

58. The refinancing and the use of the proceeds therefrom in the medical practice, was done in the ordinary course of business.

59. Stamats say that the failure to include the refinancing of the Michigan property on the original Statement of Financial Affairs, was not done with intent to conceal or hide these transactions from anybody.

60. Stamats say that they did not schedule the $10,000 payment to Oak Brook Financial Group in settlement of pending litigation in their original Answer to Question 10 of the Statement of Financial Affairs, because they did not understand that this was a transfer of property. Also, the Defendants say they believed at the time that Oak Brook was not paid within two years prior to bankruptcy, although in fact it was paid within that period.

61. The source of the monies used for the settlement were borrowed from Penny Stamat's sister Bessie Cole and her brother-in-law, Les Cole.

62. Bessie and Les Cole are scheduled as unsecured creditors of the Debtors on their Schedules.

63. At the § 341 meeting on November 14, 2007, the Defendants testified about the $10,000 payment to Oak Brook Financial Group in settlement of the pending litigation against Dr. Stamat. (Plaintiff's Ex. # 11, p. 32).

64. Defendants amended Question 10, of the Statement of Financial Affairs on May 8, 2008 to reflect the $10,000 payment to Oak Brook Financial Group. (Defendants' Ex. # 30).

65. Dr. Stamat practiced medicine with Meyer Medical Physicians Group since 1986. (R.P. 106) Meyer Medical filed bankruptcy in 2001 and no longer exists.

66. Dr. Stamat owned an interest in 4425 W. 63rd Medical Center; the company was not a business but an investment which held title to the building out of which Meyer Medical operated one of its offices.

67. The investment was sold in 2003, and Dr. Stamat received a small profit.

68. Hoffman/Elk Grove was bought in the last 2 to 6 months of Meyer Medical's business existence.

69. Dr. Stamat never received any monies back from his investment in either Meyer Medical or Hoffman/Elk Grove Physicians.

70. At the Creditors meeting on November 14, 2007, the Defendants disclosed their investments or business interests in Meyer Medical, Trailhead Land Investment, Eagle Crest Golf Club, Windy City Investors, Founders Brewing Company, 4425 West 63rd Medical Center and Hoffman/Elk Grove Physicians Group. (R.P. 1005–06).

71. The Defendants, pursuant to subpoena of the U.S. Trustee again disclosed all of the foregoing investments and business interests. (R.P. 111).

72. Defendants amended Question 18, of the Statement of Financial Affairs on May 8, 2008 to reflect their ownership of Stamat Pediatrics, L.L.C., On Time Billing LLC, Meyer Medical Physicians Group, 4425 West 63rd Medical Center, and Hoff-

man/Elk Grove Physicians Group. (Defendants' Ex. # 30).

73. Stamats say that omission of the foregoing investments and/or business interests from the original Statement of Financial Affairs was not done with any intent to conceal or hide any of these entities or for the purpose of deceiving the Trustee or any of the creditors.

74. Additional facts set forth in the Conclusions of Law will stand as additional Findings of Fact.

## CONCLUSIONS OF LAW

### Jurisdiction

1. This Court has jurisdiction to hear and determine this Complaint pursuant to Title 28, § 157(b)(2)(J) of the United States Code and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.

2. Venue of this proceeding is in the United States District Court for the Northern District of Illinois pursuant to Title 28, § 1409(a).

3. The U.S. Trustee has authority to prosecute this Complaint pursuant to Title 11 U.S.C. § 727(c)(1).

### Discharge Standards

4. The U.S. Trustee has the burden of proof and must prove every element of his objections to discharge by a preponderance of the evidence. *In re Scott,* 172 F.3d 959, 966–67 (7th Cir.1999); *In re Martin,* 141 B.R. 986, 992 (Bankr.N.D.Ill. 1992).

5. Pursuant to Rule 4005 Fed. R. Bankr.P., the plaintiff bears the burden of proving his objection to the debtor's discharge. However, once the plaintiff has established that the acts complained of occurred, the burden of production shifts to the debtor who must then come forward with a "credible explanation of his actions."

*In re Costello,* 299 B.R. 882, 894 (Bankr. N.D.Ill.2003).

6. A Chapter 7 discharge "recognizes the Congressional intent of providing the bankrupt with a 'fresh start,'" [and] "11 U.S.C. § 727(a) of the Bankruptcy Code must be construed strictly against the objecting [party] and liberally in favor of the debtor." *Id.* A violation by the debtor of any provisions of § 727, however, completely bars a debtor's discharge. *Id.*

### 11 U.S.C. Section 727(a)(2)

7. Section 727(a)(2) provides that the court shall grant a discharge unless the debtor, with intent to hinder, delay or defraud a creditor has transferred, removed, destroyed, mutilated, or concealed property of the estate within one year of the date of the filing of the petition or property of the estate after the date of the filing of the petition.

8. This section requires proof that the debtor (1) transfer or conceal property, (2) that belongs to the estate, (3) within one year of filing the petition, (4) with the intent to hinder, delay or defraud a creditor of the estate. *In re Broholm,* 310 B.R. 864, 877 (Bankr.N.D.Ill.2004) (citing *Community Bank of Homewood–Flossmoor v. Bailey (In re Bailey),* 145 B.R. 919 (Bankr.N.D.Ill.1992)).

Accordingly, two components must be met, before a debtor's discharge will be denied; (1) a transfer or concealment of property of the estate and (2) a subjective intent to hinder, delay or defraud creditors. *In re Self,* 325 B.R. 224 at 237. Moreover, both acts must have been committed within the year prior to filing of the bankruptcy. *In re Self,* 325 B.R. 224 at 237.

"A concealment for purposes of Section 727(a)(2) consists of 'failing or refusing to divulge information to which creditors were entitled.' *Holstein,* 299 B.R. 211, 229 (Bankr.N.D.Ill.2003) (internal quotation omitted); *see also Scott,* 172 F.3d at 967 (stating that concealment includes preventing discovery or fraudulently transferring or withholding knowledge or information required by law to be made known)."

9. Although the ultimate burden of persuasion is on the plaintiff, the debtor cannot prevail if after the plaintiff has made a prima facie case, the debtor is unable to offer credible evidence to rebut that case. *In re Costello,* 299 B.R. at 894.

10. Transfer or concealment may occur even if creditors are not harmed by it. *In re Costello,* 299 B.R. at 894 (citing *In re Scott,* 172 F.3d 959, 968 (7th Cir. 1999)).

11. Actual intent to hinder, delay or defraud a creditor is required under § 727(a)(2)(A) but intent may be proved by circumstantial evidence or by inferences drawn from a debtor's course of conduct. *In re Costello,* 299 B.R. at 895. The state of mind known as "reckless disregard" is, at least for purposes of Bankruptcy Code § 727, the equivalent of knowing that the representation is false and material. *In re Chavin,* 150 F.3d 726, 728 (7th Cir.1998) (citing *In re Yonikus,* 974 F.2d 901, 905 (7th Cir.1992)).

12. When they filed their bankruptcy case, these Defendants had experienced counsel with many years of bankruptcy experience, and they understood their disclosure obligations under the Bankruptcy Code. They are well educated: Nicholas is a pediatrician and Penny has a bachelor's degree in math and accounting. Mrs. Stamat has employment experience as a business Controller and has managed the finances of her husband's medical practice for many years. Neither Defendant

claimed that they did not understand the Schedules or Statement of Financial Affairs when they were completing them. Mr. Stamat testified that he relied mainly on Mrs. Stamat for the preparation of the bankruptcy papers and Mrs. Stamat testified that she collected and prepared the information requested for the bankruptcy. Some of it was in her custody and some of it was with their accountant.

13. The Defendants acknowledged numerous omissions from their Schedules and from their Statement of Financial Affairs. They produced documents that verified that certain assets were omitted, and Defendants amended their Schedules and Statement of Financial Affairs on the eve of trial to add most, but not all, of the assets and other information rooted out by creditors and the U.S. Trustee, with which they were confronted.

14(a). Reckless disregard is the state of mind present when a debtor does not care about the truth or falsity of a statement. When proven it satisfies the intent to defraud requirement of § 727(a)(2). *In re Chavin,* 150 F.3d at 728. In the present action, these Defendants clearly exhibited a reckless disregard for the truth of their Schedules and Statement of Financial Affairs by filing documents that they knew or should have known were incomplete and inaccurate in many details.

(b). In their original Schedules and Statement of Financial Affairs, Defendants failed to disclose several assets that were specifically requested by the Schedule and Statement of Affairs, namely two guns, business interests, and counterclaims they were pursuing. Defendants also failed to identify payments and transfers of their property interests made within two years before filing the bankruptcy petition, i.e., two refinancings of their second home (for which they received more than

$90,000) and settling pending litigation with a $10,000 cashier's check. Further, Defendants failed to disclose Dr. Stamat's employment as a police officer.

(c). Defendants argue that they did not make a false oath in response to Question 1 of the Statement of Financial Affairs by failing to list gross income of $265,012 from Stamat Pediatrics L.L.C., because a limited liability company is a separate legal entity and its members are not personally liable for its liabilities. They argue that the gross income received by Defendants in 2006 from their limited liability companies was $20,559, the amount reflected on Line 12 of their 2006 Individual Income Tax Return, Form 1040. Defendants' characterization of a limited liability company as a separate legal entity is a correct statement of state corporate law for purposes of liability, but is irrelevant for purposes of federal taxation and determining gross income. Defendants' arguments, therefore, are without merit.

The benefit of organizing a business as a limited liability company is that the members can get the benefits of limited liability available to a corporation, while also taking advantage of pass-through taxation treatment of a partnership. NTS Am. Jur.2d Limited Liability Companies § 1 (2008). A single-member limited liability company, such as Stamat Pediatrics L.L.C., may file a Form 1040 Schedule C, further simplifying the taxation of a limited liability company. Michael F. Schaff & Robert J. Chalfin, *Basic Factors to Consider When Advising Clients in Choosing an LLC or a Corporation,* New Jersey Lawyer, 239 APR NJLAW 55 (April 2006).

Defendants filed a Form 1040 Schedule C for 2006 for Stamat Pediatrics and On Time Billing LLC. For Stamat Pediatrics, they listed $265,012 as *Gross profit,* and $25,989 as *Net profit* on their Schedule C.

On a separate Schedule C for On Time Billing, they listed $22,188 as *Gross profit*, and ($5,430) as *Net (loss)*. In other words, the $20,559 that Defendants argue was their *gross* income from operation of business is really the *net* amount of the *net* profit/loss of both limited liability companies controlled by Defendants (i.e., $25,989–$5,430 = $20,559). Thus, Line 12 of Form 1040, which is labeled Business Income (or Loss), does not measure gross income, but is the net amount of two net amounts.

Defendants argue that they made a mere ministerial mistake in filling out their bankruptcy forms and, therefore, there was no intent to deceive. That is not credible. In response to Question 1 of their original Statement of Financial Affairs, Defendants listed $53,309 as gross income from operation of business in 2006. The amount that they now argue represents their gross income from business, $20,559, does not even match that amount listed on their Statement of Financial Affairs. Moreover, Stamats did not correct this discrepancy on their amended Statement of Financial Affairs which would support their argument that they just did not understand the bankruptcy forms.

Mrs. Stamat testified that the $53,309 listed on the Statement of Financial Affairs was an estimate, because their 2006 tax returns were not completed when she filled out the bankruptcy forms. However, Stamats' tax return was filed on June 26, 2007, and their bankruptcy was not filed until July 26, 2007. Defendants' tax return was clearly available before they filed bankruptcy, but they failed to go back and amend their Statement of Financial Affairs so that, at a minimum, the amount listed on their Statement of Financial Affairs and on their Tax Return as Business Income was the same.

While the $53,309 listed on their Statement of Financial Affairs overestimates the net income Stamats actually received from operating their limited liability companies in 2006 ($20,559), it grossly understates the gross income from Stamat Pediatrics and On Time Billing ($265,012 + $22,188 = $287,200), which is what Question 1 asks for. Taken as a whole, Defendants' explanation constitutes a reckless disregard for the truth or falsity of their bankruptcy schedules. The record supports a finding of their intent to hinder, delay or defraud their creditors.

(d). When these deficiencies were discovered and identified, Defendants partly acknowledged them. Defendants amended their Schedule B in December but only to disclose the ownership of two guns. The Schedules were amended again on May 8, two weeks before trial. At that time, the Defendants also amended their Statement of Financial Affairs but failed to include in the amendments all of the discovered and specifically identified omissions. As illustrated by their pattern of amending their Schedules and Statement of Financial Affairs after others identified deficiencies, the Defendants have exhibited a reckless disregard for the truth in their bankruptcy filings.

15. Accordingly, the U.S. Trustee proved by a preponderance of the evidence that the Defendants, with intent to hinder, delay or defraud a creditor transferred and concealed their property within one year of the date before filing of the bankruptcy petition, or did so with property of the estate after filing of the petition. and their discharge will therefore be denied under 11 U.S.C. § 727(a)(2).

### *11 U.S.C. Section 727(a)(4)*

16. Section 727(a)(4) provides that the court shall grant a debtor a discharge unless the debtor knowingly and fraudulent-

ly, in connection with the case makes a false oath or account, among other things.

17. The party alleging the debtor has breached this affirmative duty "has the burden of proof to establish five elements: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with intent to defraud; and (5) the statement related to the bankruptcy case in a material way." *In re Costello,* 299 B.R. at 899 (citing *In re Bailey,* 145 B.R. at 926). Although the burden of proof rests on the creditor at all times, the debtor cannot prevail if he is unable to offer credible evidence after the plaintiff has established a prima facie case. *Id.* (citing *In re Sapru,* 127 B.R. 306, 314 (Bankr.E.D.N.Y. 1991)).

18. The purpose of § 727(a)(4) is to "enforce the debtor's duty of disclosure and to ensure that the debtors provide reliable information to those who have an interest in the administration of the estate." *In re Broholm,* 310 B.R. at 879 (citing *In re Bostrom,* 286 B.R. 352, 359 (Bankr.N.D.Ill.2002)). For purposes of § 727(a)(4), a debtor's petition and schedules, statement of financial affairs, statements made at a § 341 meeting and testimony at a Rule 2004 examination all constitute statements that are made under oath. *Id.* Filing of false schedules with material omissions or representations with an intent to mislead creditors as to the debtor's financial condition constitutes a false oath under § 727(a)(4). *In re Broholm,* 310 B.R. at 879.

19. The debtor must disclose all ownership interests that he or she he holds in property. *In re Costello,* 299 B.R. at 899. "The trustee and creditors are entitled to honest and accurate signposts on the trail showing what property has passed through the [d]ebtor's hands during the period prior to his bankruptcy. [citations omitted] It is not the debtor's responsibility to decide which assets are to be disclosed to creditors; rather, his job is simply to address each question and answer it accurately and completely . . ." *Id.*

20. The failure to schedule items of small value will not in itself justify a bar or discharge under § 727(a)(4) when that failure does not impact on the bankruptcy "in a material way." *See id.* The requirement of materiality in bankruptcy is analogous to application of the equitable doctrine "de minimus non curat lex."

For example, the Defendants' original Schedule B, which was made under oath, failed to list two service revolvers. The omission of those handguns from the original Schedule B did not materially relate to administration of bankruptcy estate assets. Moreover, at the time the Schedules were prepared, the omission of the service revolvers was not made with fraudulent intent. Mrs. Stamat believed that the handguns were owned by the Village of Thornton. Dr. Stamat testified to his ownership of the two service revolvers at the § 341 meeting of creditors on November 14, 2007 and the Schedule B was amended on December 7, 2007 to reflect ownership of those handguns.

In short, the omission of the guns was neither material nor made with fraudulent intent.

Moreover, although Schedule I did not list Dr. Stamat's employment as a part-time police officer with the Village of Thornton, the business income of $3,333 listed on Schedule I included his income as a part-time police officer. Accordingly, the failure to break out Dr. Stamat's salary as a part-time police officer was not material nor made with knowing intent to defraud or with reckless disregard of the

truth. Defendant readily admitted that he was a part-time police officer at the § 341 meeting of creditors and the Debtors amended their Schedules and Statement of Financial Affairs on May 8, 2008 to break out separately Dr. Stamat's salary as a part-time police officer.

 However, although not every single item of assets need be schedule and valued, "there comes a point when the aggregate errors and omissions cross the line past which a debtor's discharge should be denied." *In re Costello*, 299 B.R. at 899 (citing *In re Bostrom*, 286 B.R. 352, 360–61 (Bankr.N.D.Ill.2002)). "Complete financial disclosure is 'a condition precedent to the privilege of discharge.'" *In re Olbur*, 314 B.R. 732, 745 (Bankr.N.D.Ill.2004) (citing *Glucona Am., Inc. v. Ardisson (In re Ardisson)*, 272 B.R. 346, 359 (Bankr.N.D.Ill. 2001)).

 21. "A debtor cannot excise a false oath by making subsequent corrections to his bankruptcy petition . . . . (citations omitted). Allowing a debtor to submit false schedules and then, on discovery, avoid the negative consequences of his dishonesty by amending those schedules is contrary to the spirit of the law which aims to relieve honest debtors only . . . . (citations omitted) The operation of the bankruptcy system depends on honest reporting. If debtors could omit assets at will, with the only penalty that they had to file an amended claim once caught, cheating would be altogether too attractive. . . ." *In re Costello*, 299 B.R. at 899–900.

 22. Fraudulent intent may be inferred from circumstantial evidence or by inferences based on a course of conduct. *In re Costello*, 299 B.R. at 900 (citing *In re Bailey*, 145 B.R. at 928). Moreover, if a debtor's bankruptcy schedules and statements indicate that the debtor is recklessly indifferent to the truth, the ob-

jecting creditor does not have to offer any additional evidence of fraud. *In re Costello*, 299 B.R. at 900.

 23. The cumulative effect of a number of false oaths by the debtor with respect to a variety of matters establishes a pattern of reckless and cavalier disregard for the truth by the debtor. *In re Costello*, 299 B.R. at 900 (citing *In re Calisoff*, 92 B.R. 346, 355 (Bankr.N.D.Ill. 1988)).

 24. Finally, the plaintiff must show that the false statements made by the debtor relate materially to the bankruptcy case. A statement is considered material for purposes of § 727(a)(4) if it relates to the debtor's estate, involves the discovery of assets, or concerns the disposition of the debtor's property or his entitlement to discharge. *In re Costello*, 299 B.R. at 900 (citations omitted).

 25(a). Plaintiff proved by a preponderance of the evidence that both Defendants made numerous false oaths. Defendants signed Schedules and Statement Financial Affairs under penalty of perjury that they authorized to be filed with this Court and that they knew or should have known were inaccurate and incomplete. The cumulative effect of their numerous false statements is material because the omissions directly relate to the Defendants' estate, such as unidentified and undisclosed assets and the disposition of the Defendants' property, especially the disappearance of equity from their second home during the two years before the bankruptcy. The Defendants' subsequent amendments to their Schedules and Statement of Financial Affairs, which only partially corrected previous omissions, cannot erase the falsity their prior oaths. The cumulative effect of their misrepresentations and omissions clearly establish the Defendants' pattern of reckless indifference to the

truth and, therefore, their discharge is denied under § 727(a)(4).

(b). The Defendants argue that by reason of certain wording and definitions pertinent to question No. 18 of the Statement of Financial Affairs, their omission of several small investment interests should not be charged against them as knowing or fraudulent. In light of the official form for the Statement, some sympathy could be considered for their possible confusion in use of that form.

The term "in business" is defined in the Official Form of the Statement of Financial Affairs as "An individual debtor is 'in business' for the purpose of this form if the debtor is or has been, within six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time." Defendants offered evidence that they did not fall into any part of that definition, and the Trustee did not refute that evidence.

Defendants therefore argue that ownership of limited partnership interests in Trailhead Land Investment L.P., and Eagle Crest Golf Club, Ltd., Partnership, are excluded from the definition of "in business" for the purpose of the Statement of Financial Affairs.

Also, because the Defendants were neither an officer, director, managing executive nor owner of 5 percent or more of the voting or equity securities of either Windy City Investors LLC or Founders Hill Brewing Company, Inc., it is argued that their ownership of those entities is excluded from the definition of "in business" for the purpose of the Statement of Financial Affairs.

(c). However, other parts of the Statement should have alerted Stamats and their counsel to report those investments. Defendants' argument ignores the introductory paragraph preceding the definitions section. According to that paragraph, "Questions 1–18 are to be completed by *all* debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19–25." (Emphasis Added). Thus, Defendants were required to provide accurate and complete answers to Question 18.

According to Question 18:
*If the debtor is an individual,* list the names, addresses, taxpayer-identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, *partner,* or managing executive of a corporation, *partner in a partnership,* sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time with **six years** immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

(Underlined emphasis added). The instructions for answering Question 18 do not contain the exception for limited partners and, therefore, required Defendants to list all partnerships in which they held a partnership interest, including a passive investment interest. They were not required to list their membership interests in limited liability companies.

It is true that language defining "*In business*" at the beginning of the Statement of Financial Affairs and the instructions for completing Question 18 are so similar that it is possible to confuse even the honest debtor for whom bankruptcy relief is intended. Follow-up Questions

19–25 ask for information that would most naturally be in the possession of owners in a management position, and not passive investors such as Defendants.

Based on ambiguity of the definitions and instructions, we might not attribute fraudulent intent to Defendants in this case for their failure to list the partnership interests on their Statement of Financial Affairs, were it not for their failure to list these partnership and membership interests as personal property assets on Schedule B of their bankruptcy petition. The fact that they disclosed these ownership interests at their creditors meeting is not a defense. Debtors should not be rewarded for omitting information about assets by allowing them to amend their schedules after they have been caught. *Payne v. Wood*, 775 F.2d 202, 205 (7th Cir.1985) ("The operation of the bankruptcy system depends on honest reporting. If debtors could omit assets at will, with the only penalty that they had to file an amended claim once caught, cheating would be altogether too attractive."). It should be noted that these particular Defendants did not even include these partnership and membership interests on their amended Schedule B, which was filed on December 7, 2007, after the § 341 creditors meeting.

Therefore, it is found that Defendants made a false oath or account by failing to list these partnership and membership interests in response to Question 18 of their Statement of Financial Affairs or as assets on their Amended Schedule B.

### 11 U.S.C. Section 727(a)(5)

26. Section 727(a)(5) provides that the court shall grant a debtor a discharge unless the debtor has failed to satisfactorily explain any loss of assets or deficiency of assets to meet the debtor's liabilities.

27. By penalizing a debtor who is insufficiently forthcoming about what hap-pened to his assets, § 727(a)(5) is one of several Code provisions meant to "relieve [ ] creditors and courts of the full burden of reconstructing the debtor's financial history and condition, placing it instead upon the debtor." *In re Olbur*, 314 B.R. at 740 (Bankr.N.D.Ill.2004) (quoting *In re Hermanson*, 273 B.R. 538, 545 (Bankr.N.D.Ill. 2002)).

28. Under § 727(a)(5), the bankruptcy court has "broad power to decline to grant a discharge ... where the debtor does not adequately explain a shortage, loss, or disappearance of assets." *In re Olbur*, 314 B.R. at 740 (quoting *In re D'Agnese*, 86 F.3d 732, 734 (7th Cir.1996)); *In re Martin*, 141 B.R. 986, 992 (Bankr. N.D.Ill.1992).

29. Proof under § 727(a)(5) comes in two stages. Initially, the objecting party bears the burden of showing that the debtor "at one time owned substantial and identifiable assets that are no longer available to his creditors." *In re Olbur*, 314 B.R. at 740 (quoting *In re Bostrom*, 286 B.R. at 359 (Bankr.N.D.Ill.2002) and *In re Hermanson*, 273 B.R. at 545).

30. If this showing is made, the burden then falls on the debtor to offer a "satisfactory explanation" for the unavailability of those assets. *In re Olbur*, 314 B.R. at 740–41 (quoting *In re Bostrom*, 286 B.R. at 364 and *In re Hermanson*, 273 B.R. at 545). Whether an explanation is satisfactory or not rests with the court's discretion. *In re Olbur*, 314 B.R. at 741 (citing *In re Bostrom*, 286 B.R. at 364). The Court is not concerned with the wisdom of the debtor's disposition of their assets and income but rather the Court focuses on "the completeness and truth of the debtor's explanation." *In re Costello*, 299 B.R. at 901.

31. Although the explanation does not necessarily need to be compre-

hensive, *id.*, it must meet two criteria in order to be deemed "satisfactory." *In re Mantra,* 314 B.R. 723, 730 (Bankr.N.D.Ill. 2004) (citing *In re Bryson,* 187 B.R. 939, 955 (Bankr.N.D.Ill.1995)). First, it must be supported by documentation. *In re Costello,* 299 B.R. at 901. Second, this documentation must be sufficient to "eliminate the need for the Court to speculate as to what happened to all the assets." *Id.* (citing *In re Bostrom,* 286 B.R. at 364–65); *see also In re Hansen,* 325 B.R. at 763 (noting the intertwined relationship between the documentation required by § 727(a)(3) and the adequacy of the explanation under § 727(a)(5)).

■■■■ 32. The debtor must explain in good faith "what really happened to the assets in question." *In re Olbur,* 314 B.R. at 740 (quoting *In re Bailey,* 145 B.R. at 925). The debtor's explanation must amount to more than a "vague, indefinite, and uncorroborated hodgepodge of financial transactions." *In re Olbur,* 314 B.R. at 741 (quoting *In re Costello,* 299 B.R. 882, 901 (Bankr.N.D.Ill.2003)).

■■■■ 33. A debtor "cannot abuse the bankruptcy process by obfuscating the true nature of his affairs and then refusing to provide a credible explanation." *In re Mantra,* 314 B.R. at 730 (citing *In re Johnson,* 98 B.R. at 366). Even though a satisfactory explanation must be convincing about this lack of concealment, the focus of the inquiry is not exclusively on the subjective nature or honesty of the debtor's explanation, but is also on the objective adequacy of such explanation. *In re Mantra,* 314 B.R. at 730 (citing *In re D'Agnese,* 86 F.3d at 734–35). A debtor's failure to justify satisfactorily a substantial loss of assets, however, need not be the product of fraudulent intent. *In re Mantra,* 314 B.R. at 730 (citing *In re Gannon,* 173 B.R. 313, 317 (Bankr.S.D.N.Y.1994)).

■■■ 34. Here, the U.S. Trustee has met his burden of showing that the Defendants at one time owned substantial and identifiable assets that are no longer available to their creditors.

35. Specifically, the Schedules state, under penalty of perjury, that when they filed in bankruptcy, the Defendants had no equity in their real property and only $16,620.67 in personal property.

36. The Defendants failed to meet their burden to offer a satisfactory explanation for the unavailability of the substantial and identifiable assets. Although the Defendants produced an assortment of documentation and testified about their financial demise, neither Defendant could fully explain how their personal and professional bank accounts reconciled, how their income was determined or what happened to all of the cash removed from their accounts. Although the Defendants stated that the funds were spent on their personal expenses and Dr. Stamat's medical practice, there was little evidence to corroborate this explanation. The Defendants' vague, indefinite and uncorroborated explanation left the Court, creditors and the U.S. Trustee to speculate as to what actually happened to the Defendants' assets—a requirement for speculation that § 727(a)(5) prohibits.

37. Accordingly, the Court finds that pursuant to 11 U.S.C. § 727(a)(5), the U.S. Trustee has proven by a preponderance of the evidence that the Defendants have failed to satisfactorily explain loss of assets or deficiency of assets to meet their liabilities, and the Defendants' discharge is therefore denied on that basis.

38. Any conclusion of law may be considered a finding of fact to the extent appropriate.

### Defendants Waived Any Objections to Asserted Insufficiency of Trustee's Responses to Interrogatories

■ Defendants now raise an objection to the Trustee's proofs admitted into evidence regarding allegations that Defendants failed to schedule their counterclaim against Standard Bank, as an asset, and that they failed to schedule $265,012 from Stamat Pediatrics, L.L.C. as gross income from business for 2006. According to Defendants, the Trustee failed to assert these contentions in response to Defendants' Interrogatories, (Defendants' Ex. 28), or in the Trustee's Proposed Findings of Fact and Conclusions of Law. Defendants seem to be retroactively seeking to prohibit the Trustee "from supporting or opposing designated claims or defense, or from introducing designated matters in evidence ..." as a discovery sanction pursuant to Rule 37(b)(2)(A)(ii) Fed.R.Civ.P. This is not the proper procedure for seeking sanctions to enforce discovery and, therefore, if Defendants had an objection it was waived.

If Defendants believed they could show that the Trustee's Answers to their interrogatories were insufficient, after making a good faith effort to confer with the Trustee concerning the allegedly incomplete answers, they should have made a Motion to Compel pursuant to Rule 37(a)(3)(B)(iii) Fed.R.Civ.P. If the Trustee continued to fail to provide complete answers to Defendants' interrogatories, the Stamats could then have made a motion for sanctions pursuant to Rule 37(d)(1)(A)(ii) Fed. R.Civ.P. Possible sanctions include, "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence ..." under Fed. R.Civ.P. 37(b)(2)(A)(ii), which appears to be the remedy that Defendants seek after trial.

Defendants did not follow these steps for enforcing the Trustee's alleged discovery violations. Nor did they raise these matters as objections to evidence at trial. Rather, they waited until after trial to ask for a finding that implied an objection to the Trustee's evidence. An interrogatory may serve the purpose of clarifying issues in the case as by "contention interrogatories." See 23 Am.Jur.2d Depositions and Discovery § 121 (2008). It was arguably impossible for Defendants to anticipate before trial that the Trustee would attempt to present evidence in support of a contention that he failed to disclose in his Answers to Interrogatories. Therefore, Defendants cannot be said to have waived their objection by failing to make a Motion to Compel.

However, Rule 103(a) Fed.R.Evid. requires that evidentiary objections be made contemporaneously with presentation of evidence. At trial, Defendants objected based on relevancy, but failed to make any objection concerning lack of notice. Consequently, "[w]hen a party fails to timely and properly object at trial to the admission of evidence, the party is deemed to have waived the issue...." *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 727 (7th Cir. 1999). Here, when the Trustee sought to present evidence at trial concerning the factual contentions allegedly omitted from the Answers, Defendants, by their own inaction, waived any objection to the Trustee's allegedly insufficient interrogatory answers. *See Butler v. Pettigrew*, 409 F.2d 1205, 1207 (7th Cir.1969) (holding that plaintiff waived right to compel answers or seek discovery sanctions when it waited until after trial to object to sufficiency of interrogatory answers).

### CONCLUSION

For the foregoing reasons, the Court will separately grant judgment in favor of

the United States Trustee and sustains the objections to discharge under §§ 727(a)(2), (4) and (5). The Debtors' discharge will therefore be denied by separate Judgment Order.